Argued May 7, affirmed in part; reversed in part October 2,
petition for rehearing denied November 7, 1968

STILL, *Respondent, v.* BENTON ET AL,
*Appellants.*
445 P. 2d 492

*David C. Silven,* Baker, argued the cause for appellants. With him on the briefs were Banta, Silven & Young, Baker.

*Nels Peterson,* Portland, argued the cause for respondent. With him on the brief were Peterson, Chaivoe & Londer and Donald H. Londer, Portland.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

DENECKE, J.

The plaintiff was the police chief of Baker, Oregon, and brought this action against the defendant Benton, who was the mayor of Baker, and the defendant Neuberger, a councilman of Baker, alleging that they

wrongfully coerced the city manager to discharge him. Plaintiff recovered a verdict for general and punitive damages against both defendants and they appeal.

Plaintiff in his complaint alleged that the two defendants conspired to secure plaintiff's discharge. He then alleged: "* * * [P]ursuant to said conspiracy, defendant Benton induced and coerced the city manager * * * to discharge plaintiff as Chief of Police * * *." Plaintiff further alleged that the city had been satisfied with his services, "but the defendant Benton, acting in concert with the defendant Neuberger, and pursuant to a conspiracy * * * persuaded, and induced said employer, acting by and through said city manager, to discharge plaintiff * * *."

■ When a plaintiff alleges and proves that several defendants conspired to commit a tort upon him, all the defendants involved in the conspiracy can be held liable for the overt act which is committed by one of the defendants pursuant to the conspiracy. If a conspiracy is not proved, only those defendants can be held liable who are alleged and proved to have personally committed a tortious overt act against the plaintiff. *Security & Inves. Co. v. Locks Towing,* 213 Or 503, 512, 326 P2d 439 (1958).

■ We interpret the plaintiff's allegations in his complaint as charging a conspiracy between the defendants Benton and Neuberger and the commission of the overt act by Benton alone. This construction of the pleadings was urged by the defendant Neuberger throughout the trial and on the appeal, but was not directly passed upon by the trial judge and was never answered by the plaintiff. The trial court held that there was no evidence of a conspiracy between Neuberger and Benton. The plaintiff does not expressly

concede this, but does not contest this determination. We agree with this decision of the trial court. *State v. Parker,* 225 Or 88, 92, 356 P2d 88 (1960).

■ Since the pleadings have based Neuberger's liability solely upon a conspiracy between Benton and Neuberger and an overt tortious act in furtherance of such conspiracy by Benton alone, the verdict against Neuberger must fall because of the lack of proof of a conspiracy.

The defendant Benton contends that the failure of the proof of a conspiracy causes the plaintiff's case against Benton to fall as well. We have held to the contrary. In *Keller v. Commercial Credit Co.,* 149 Or 372, 375, 40 P2d 1018, 96 ALR 1235 (1935), we stated:

"* * * It was not essential to recovery that there be proof of conspiracy. Conspiracy is not the gravamen of the complaint. The injury of which plaintiff complains was possible of accomplishment by the act of either defendant. Of course, if judgment were to be obtained against both defendants, proof of conspiracy or joint action would be essential. * * *"

■ The defendant also contends that because there was no evidence of conspiracy, the plaintiff should be required to elect which defendant he is going to continue against because the plaintiff cannot obtain a judgment against more than one tortfeasor unless they are conspirators or joint actors. Without deciding whether the plaintiff must elect, we hold that the trial court's failure to require an election was not prejudicial.① It is not prejudicial to the defendant Neu-

---

① The defendant's position is supported by Dahms v. Sears, 13 Or 47, 65, 11 P 891 (1885); Cooper v. Blair, 14 Or 255, 12 P 370 (1886); Tyler v. T. of T. A. & P. U., 14 Or 485, 492-493, 13 P 327 (1887); Gordan v. Briody, 170 Or 410, 415, 134 P2d 431

berger as we have held he should have had his motion for directed verdict granted. It is not prejudicial to the defendant Benton as there is evidence that he is guilty of conduct which caused the plaintiff damage and he would have been the sole defendant remaining in the case if the trial court had acted correctly and granted Neuberger's motion for a directed verdict.

■ Defendant Benton contends that inasmuch as a conspiracy was not proved, testimony that Neuberger stated that the plaintiff must be discharged is inadmissible. He relies upon ORS 41.900, which provides:

> "Evidence may be given of the following facts:
> "* * * * *
>
> "(6) After proof of a conspiracy, the declaration or act of a conspirator against his coconspirator, and relating to the conspiracy."

The evidence was admissible because it was competent evidence against Neuberger and, therefore, defendant's contention has no merit.

■ Closely allied to this issue is defendant's charge that the trial court erred in failing to instruct the jury that any alleged statements or conduct of the one defendant could not be considered as evidence against the other. Such an instruction had been requested.

We conclude that the instructions given, when considered in their entirety, adequately covered the subject although in a manner not as favorable to the de-

(1943). However, Gabriel v. Collier, 146 Or 247, 255, 29 P2d 1025 (1934); Keller v. Commercial Credit Co., supra (149 Or 372); Security & Inves. Co. v. Locks Towing, supra (213 Or 503), render the matter doubtful.

fendant as the defendant's request would have done.[2] The trial court instructed:

> "You are instructed that there being no evidence to show a conspiracy in this case as alleged in the amended complaint of the plaintiff, the matter of an alleged conspiracy is not to be considered by you in your deliberations nor in consideration of the evidence.  *  *  *"

None of the testimony of what Neuberger said or did implicated Benton. The testimony was generally to the effect that Neuberger had told the witness that Neuberger was "unhappy" with the police chief; that upon Neuberger's being given a traffic citation the witness testified that Neuberger said, "we will see if you get away with this," and like testimony. The trial court instructed the jury concerning such statements allegedly made by either defendant as follows:

> "Testimony regarding the oral admissions or statements of a party unfavorable to his interest are to be viewed with caution  *  *  *. On the other hand, if you can say from the evidence that the alleged admissions were clearly and understandingly made by the party, that they are precisely identified, and that the language is correctly remembered and accurately reported by the witness, you are authorized to consider such admissions for what you deem them to be worth *against the party making them*  *  *  *." (Emphasis added.)

Defendant Benton contends that plaintiff Still cannot recover because there is no proof of "malice." He also argues that his action was "privileged" because he was mayor of Baker and acted in good faith for the benefit of the city.

■ The parties agree that "malice" in the sense of "ill will" is not an essential ingredient of the tort.

---

[2] Giving the requested instruction also would not have been error.

*Sloan v. Journal Publishing Co.,* 213 Or 324, 360, 324 P2d 449 (1958). The parties seem to agree that "malice" means intentionally interfering with a contractual relationship without justification; and they also seem agreed that "justification" may mean the same as "privilege" in other areas of tort law.

After the briefs were filed in this case we handed down our opinion in *Wampler v. Palmerton,* 250 Or 65, 439 P2d 601 (1968), in which Mr. Justice HOLMAN made an analysis of the law and terminology in this area of the law. That case involved the liability of a corporate officer and a corporate employee for allegedly inducing the corporation to breach its contract with the plaintiff. The defendants' status in that case is similar to that of the defendant Benton who is an official of a municipal corporation. The principle stated in that decision is:

> "The interest protected by the interference with contract action is the interest of the plaintiff in not having his contract rights interfered with by intermeddling strangers. However, so long as the person inducing the breach of a corporate contract is an officer or employe *acting for the benefit of the corporation and within the scope of his authority,* the plaintiff cannot show that this interest was invaded and therefore cannot maintain an interference with contract action." (Emphasis added.) 439 P2d at 607.

■ However, in the case at bar there was evidence from which the jury could find that the defendant Benton was not acting for the benefit of the city of Baker but for some other reason. One former council member testified that three years before plaintiff's discharge, when the witness attended his first council meeting as a member, Benton, already a council member, told the witness prior to the meeting, "he

was going to get Still." When he was asked why, "he said he had his reasons." A former mayor of Baker testified:

> "Well, as I recall, it was probably in 1962, the last year I was on the Council, and we had a meeting in my office with—in connection with Fred Young, as I recall, and after discussing that and as we were leaving, you and I—Doug [Benton]— were talking and you [Benton] mentioned at that time that we have got to get rid of Still and I asked you on what basis and you said you had the information in your safe and I said, 'Well, let's get it out.' That is the last I heard of it."

Furthermore, the defendant was not acting within the scope of his authority. The Baker charter places in the city manager the power to appoint and discharge the chief of police and all other department heads. Section 25 of the charter concerns the manager and subsection (f) thereof provides:

> "No member of the council shall in any manner, directly or indirectly, by suggestion or otherwise, attempt to influence or coerce the manager in the making of any appointment or removal, or the purchase of supplies, or attempt to exact any promise relative to any appointment from any candidate for manager, or discuss, directly or indirectly, with any such candidate, the matter of appointments to any city office or employments. Any violation of the foregoing provisions of this section shall work a forfeiture of the office of the offending member of the council, who may be removed therefrom by the council or by any court of competent jurisdiction; provided, however, that nothing herein contained shall be construed as prohibiting the council, while in open session, discussing with or suggesting to the manager, fully and freely, anything pertaining to city affairs and for the best interests of the city. Neither the manager nor any person in the employ of the city, shall take any part in securing, or

shall contribute any money toward, the nomination or election of any candidate for a municipal office."

■ There was evidence that Mr. Benton was aware of this charter provision. The city manager testified that the night before plaintiff was discharged, at a meeting which was not an "open session" of the council, Benton "asked when Mr. Still would be removed from office and how long would I stall around."[®] One of the councilmen who attended this meeting stated that Benton opened the meeting by saying: "Fred [the city manager], I informed you sometime ago that it was a desire of the Council that you discharge Chief Still. We are here tonight to find out why this hasn't been carried out." This evidence was sufficient for the jury to find that the defendant Benton was acting beyond his authority as mayor and contrary to the charter.

■ The defendant Benton also contends that there was no evidence that he caused plaintiff's discharge. The city manager removed Still from his position and the city charter provides that only the city manager has that power. However, the city manager testified that he told Benton and the other members of the city council who attended the meeting the night before Still's discharge that he had no reason to discharge Still. At the meeting the manager polled the councilmen present and found that four out of the six wanted Still discharged. The city manager told Still when he removed him that he would "have to go" or they both would go. We hold this is sufficient basis for the jury to have reasonably found that Benton's conduct was a cause of the city manager's removing Mr. Still from his position.

---

[®] Defendant's contention that this meeting was an "open session" of the council is not well founded.

■ The jury awarded the plaintiff $2,000 punitive damages as well as general damages. The defendant Benton contends there was no evidence to support an award of punitive damages. We believe that some of the evidence already recited, such as Benton's statement that "he was going to get Still," places Benton's state of mind in the same category as that of the defendant's agents in *Paur v. Rose City Dodge, Inc.*, 249 Or 385, 438 P2d 994 (1968), and supports the award of punitive damages.

■ Objections were sustained to questions of the defendant on recross-examination of some of plaintiff's witnesses upon the ground that the questions were beyond the scope of recross-examination. For example, on recross by defendant, the city manager was asked whether, prior to plaintiff's discharge, he made a telephone call to the defendant Benton after the manager learned of a fight between the plaintiff and one Bowen. After objection to this question was sustained, the defendant made an offer of proof that the manager told Benton that he was going to have to get rid of Still. Obviously, such evidence was relevant. However, we hold that the trial court had discretion and power to control the progress of the trial and to prohibit such examination upon recross. In this instance the defendant had touched upon the Bowen fight in his initial cross-examination; in his redirect examination the plaintiff had not touched upon this subject although, as on direct, he had gone into the subject of the reasons why the city manager discharged Still. Under these circumstances we hold that the trial court had the discretion to limit the recross-examination to specific matters brought out in redirect.

"* * * A reading of the record abundantly discloses that defendant had been given free rein

in cross-examination, not having been hindered in any fashion by the court. Cross-examination is a matter of right, but the bounds of proper cross-examination are necessarily within the sound discretion of the trial judge, and this is particularly so when applied to recross-examination. It must be clear that counsel cannot be permitted to prolong the course of trial by continually returning to matters already considered or as to which he has been given ample opportunity to examine; otherwise, there would be no orderly procedure, and nothing but confusion." *Commonwealth v. Romano,* 392 Pa 632, 141 A2d 597 (1958). See, also, *United States v. Stoehr,* 196 F2d 276, 280 (3d Cir 1952), 33 ALR2d 836, cert den 344 US 826, 73 S Ct 28, 97 L ed 643.

■ The plaintiff in his case in chief offered testimony to the effect that Still had been a competent, honest police chief. Defendant objected, contending that such evidence was irrelevant, primarily because plaintiff's reputation, character or competency were not in issue. The overruling of this objection is assigned as error. An important issue in this case was the motive of the city manager in discharging the plaintiff; plaintiff's competency and reputation were relevant to this issue.

Defendant made other assignments of error. We have considered these and conclude that they afford no grounds for reversal.

Affirmed as to the defendant Benton; reversed as to the defendant Neuberger.