Argued March 2, affirmed April 4, 1972

ARDUESER, *Appellant, v.* RAHIER, *Respondent.*

495 P2d 724

*John J. Haugh,* Portland, argued the cause for appellant. With him on the brief were O'Connell, Goyak, Haugh & Loew, Portland.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondent. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, and James B. O'Hanlon, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN and BRYSON, Justices.

BRYSON, J.

Plaintiff brought this action for damages for personal injuries sustained in a minor automobile accident in Washington county. The facts of the accident are not germane to the questions raised on appeal. The jury returned a verdict for defendant and plaintiff appeals.

Plaintiff, in her brief, states, "Assignments of Error 1 through 4 are all addressed to the Circuit Court's refusal to sustain plaintiff's objection to testimony regarding a subsequent accidental injury, an action arising therefrom, and the settlement of the same," and has combined her argument in support of all assignments of error because "each of these Assignments of Error are closely related, * * *." We agree that the assignments of error are interrelated. They all refer to testimony received, over objection, pertaining to injuries received by the plaintiff in a fall from a horse at a time subsequent to the injuries she received in the automobile accident with which we are here concerned.

This automobile accident occurred on September 27, 1968; the complaint was filed May 18, 1970, and alleged at the time of trial:

"That as a direct and proximate result of the negligence of the defendant, plaintiff was caused to be catapulted in and about the interior of her automobile, resulting in severe tearing, twisting and wrenching of the muscles, tendons, ligaments, nerves, and soft tissues *of her neck,* headaches, nausea and a severe shock to her entire nervous system, and that said injuries caused great mental and physical pain and suffering and emotional upset; said injuries have necessitated medical treatment, including therapy, medicines, X-rays, and that all said injuries will, *in the future, continue* to cause plaintiff great mental and physical pain and suffering, all to her damage in the sum of $10,000.00." [Emphasis supplied.]

(Subsequently amended by the court, after the parties rested, to conform to the evidence); sometime in mid-1970 (the record does not indicate the exact date) the plaintiff was thrown from her horse and broke her back. This case involving the automobile accident came on for trial on March 17, 1971.

The plaintiff testified:

"Q Okay. Then in 1970 you were thrown from the horse and broke your back?

"A Yes.

"Q And by that time this injury from the auto accident had cleared up, or had it not, or—?

"A Well, I had inflamed it or aggravated it by working a lot of overtime.

"Q When did this break take place?
"* * * * * .

"Q Of what year?
"A Of '70.

"Q Okay. Were you still feeling effects from the accident that far after the accident?

"A I was in — he put me back in physical therapy."

The plaintiff also testified that her headaches were getting worse and that her neck and shoulders still hurt as a result of the automobile accident.

On cross-examination the plaintiff testified:

"Q Do you contend that you received any injury to your neck area in your horse accident?

"A No. None at all."

At this point plaintiff's counsel objected to this line of testimony on the ground that what injuries plaintiff incurred as a result of being thrown from the horse were not relevant. Following a colloquy between plaintiff's counsel and the court, the following occurred:

"MR. O'HANLON (To the Clerk): Would you mark this Complaint?

"Q Is this a complaint entitled Susanne Ardueser against the Portland Riding Academy?

"MR. MORGAN: Your Honor, I am going to have to object to introducing a complaint in another case that didn't pre-date this accident. We claimed no injury in this accident."

Defense counsel then asked the plaintiff:

"Q Does this bear your signature?

"A Yes.

"Q Does this read correctly—and I will read it—'That as a direct and proximate result of the negligence of defendants, and each of them, the plaintiff suffered severe personal injuries as follows: compression fracture of the third lumbar vertebrae, strains and sprains of the lumbar,

dorsal and cervical areas of the back—', does it say that?

"A Yes.

"Q Do you know what area is your cervical area?

"A Neck."

■ From the above, it is obvious that the plaintiff claimed injury to her neck as a result of the automobile accident and from being thrown from the horse. We find that the court committed no error in allowing the defendant to inquire of the plaintiff during cross-examination if she had suffered injuries to her neck or cervical areas as a result of both accidents. At the time of trial plaintiff was still contending that she had suffered injuries to her neck and severe shock to her entire nervous system and that such injuries would, *in the future, continue to cause plaintiff* great mental and physical pain and suffering. The jury was entitled to know that prior to the time of trial the plaintiff had verified a complaint arising out of another accident in which she also contended that she had received injuries in the cervical area of the back, or the neck. An orthopedic surgeon, Dr. Eckhardt, testified that the cervical area means the neck area.

Thus, the evidence elicited from the plaintiff, that her verified complaint against the Portland Riding Academy claimed injuries to the cervical area, was admissible to show similar injury she received from the horse accident. *Davis v. Dean,* 221 Or 110, 114, 350 P2d 910 (1960). *Yarbrough v. Carlson,* 102 Or 422, 426, 202 P 739 (1921) states:

"* * * [E]vidence of plaintiff's physical condition at any time after the injury to the time of the trial was admissible, to show the extent, nature and probable effect of the injury, * * *."

In *Twilleager v. Modin,* 240 Or 69, 70, 398 P2d 181 (1965), we stated:

"* * * The plaintiff's physical condition following former accidents was, therefore, relevant. There was no error in permitting the defendant to cross-examine the plaintiff concerning his former injuries and what he said about them in other litigation * * *."

Plaintiff also assigns as error the fact that the defense counsel brought "before the jury the fact that plaintiff had settled an unrelated action for personal injuries * * *."

■ Plaintiff's counsel, by objection to evidence and argument before the court and jury, invited a colloquy between both attorneys and the court before the jury. During this colloquy the following occurred:

"MR. MORGAN: * * * I would like to hear counsel's theory on why that is relevant 15 months later when we do not claim a permanent injury. What is his theory?

"MR. O'HANLON: If you want me to tell you, I will.

"MR. MORGAN: Go ahead.

"MR. O'HANLON: Your Honor, in that lawsuit she contended her neck was injured. She never told us that her neck was not injured any more until she gets into this court this morning. When the lawsuit involving the Riding Academy was settled—she claimed she didn't claim injuries to her neck in the Riding Academy accident, and this Complaint is impeachment of her testimony in that regard."

The record does not disclose that plaintiff's counsel objected to this remark, objected to any ruling of the court, or moved to strike the remark now complained

of. It was not evidence; it was merely a statement by counsel of his client's position. Absent a proper objection or a ruling on the matter by the court, there is nothing to review on appeal. *See Emmons v. Southern Pac. Co.,* 97 Or 263, 276, 191 P 333 (1920). In *Nibley v. Delahunt,* 105 Or 46, 48, 209 P 473 (1922), this court stated:

"* * * Ever since the decision of *Kearney v. Snodgrass,* 12 Or. 311, the rule has been that 'it is not error, simply, but error legally excepted to, that constitutes ground for reversal' * * *."

Affirmed.