Argued March 5, affirmed May 24, 1973

MARSH, *Appellant, v.* DAVIDSON, *Respondent.*

510 P2d 558

*Edwin J. Welsh,* Portland, argued the cause for appellant. With him on the brief were Welsh & O'Donnell, Portland.

*Thomas L. Sauberli,* Portland, argued the cause

for respondent. With him on the brief were Vergeer, Samuels, Roehr & Sweek, Portland.

BRYSON, J.

Plaintiff commenced this action to recover damages for personal injuries suffered in an automobile accident. A jury returned a verdict for defendant, and plaintiff appeals.

The accident occurred during the afternoon of March 27, 1971, near the intersection of Fourth and Sheridan Streets in Portland. As it approaches the Fourth Street intersection, Sheridan Street is a four-lane, one-way thoroughfare for east-bound traffic (lanes one through four, north to south). Lanes one and two carry traffic east across Fourth Street to a freeway "on" ramp. Lanes three and four permit right turns only, directing traffic south onto Fourth Street. All the lanes slope slightly downhill. On the day of the accident rain had been falling and the blacktop paving was wet.

Plaintiff was a passenger in a car stopped in lane two. Defendant approached the intersection in lane three at a speed of 15 miles per hour. Desiring to cross Fourth Street and enter the freeway rather than turn south, defendant signaled a lane change, looked to the rear, and turned left into lane two. At that point, defendant observed cars in lanes one, two, and three, and that the light was green for lanes one and two. The car in lane one proceeded but the car ahead of defendant did not move. Defendant applied his brakes but skidded on the wet pavement into the rear of plaintiff's vehicle.

In her complaint, plaintiff alleged that she suf-

fered damage to the muscles and nerves in her neck, upper back, and right arm. At trial, plaintiff admitted that she had been involved in an automobile accident in Reno, Nevada, in 1965, and that she had been hospitalized and treated with a cervical collar, traction, and a lower back brace. Plaintiff testified that she had suffered no permanent injury in the Nevada accident but could not recall whether she had alleged permanent injuries in the lawsuit. Defendant introduced into evidence the complaint filed in the Nevada lawsuit; the complaint alleged permanent injuries to plaintiff's head, neck, and back, and that she would continue to suffer, physically and mentally, during the remainder of her natural life. The prayer was for $35,000 damages. Plaintiff objected to the introduction of the entire complaint on the ground that only the allegations on injury had relevance to this case. The court overruled this objection. Plaintiff attempted to show that the Nevada claim was settled for $2,500, but the court sustained defendant's objection to this evidence.

Plaintiff also testified that on February 4, 1971, approximately seven weeks before the accident in question occurred, she sprained her right shoulder when she drove her automobile over a road divider, throwing her car into the air.

On November 1, 1971, plaintiff began working as a nurse's aide, and on January 14, 1972, she filed a claim with the State Accident Insurance Fund for workmen's compensation, claiming aggravation of a previous existing condition with muscle spasms in her back and shoulder.

■ Plaintiff's first assignment of error is based on the court's order admitting into evidence the entire

complaint in plaintiff's 1965 Nevada lawsuit. Plaintiff claims that all non-injury portions of the complaint, including the prayer for $35,000, were irrelevant, collateral, and highly prejudicial because plaintiff readily admitted the allegations of injury in that pleading.

■ In the Nevada lawsuit both plaintiff and her husband, Charles E. Marsh, were plaintiffs. The complaint was signed only by Mr. Marsh and the Marshes' attorney. Several cases in other jurisdictions have held that a party is not bound by his admissions in a pleading filed in a former action unless the pleading was personally signed or verified. See Annot., 63 ALR2d 412, § 10 (1959). However, the record in this case demonstrates that plaintiff and her husband filed the Nevada action together (permissible under Nevada procedure). If plaintiff did not expressly authorize the admissions in the complaint, she at least acquiesced in them. Such admissions are fully attributable to plaintiff. *Union Oil Co. v. Pacific Whaling Co.,* 240 Or 151, 154, 400 P2d 509 (1965); *Hofer v. Smith,* 65 Or 145, 148-49, 129 P 761 (1913); 4 Wigmore, Evidence § 1066 (Chadbourn rev 1972). Since plaintiff testified that she had not suffered permanent injuries in the accident in Nevada, contrary allegations in her Nevada complaint were admissible to affect the credibility of plaintiff as a witness and to show that plaintiff's injuries were not the result of the accident with defendant. *See Ardueser v. Rahier,* 261 Or 521, 495 P2d 724 (1972), and cases cited therein, wherein we held a prior complaint alleging injuries to the same area of the body was admissible.

■ Whether the court should have admitted the entire pleading, including the prayer for $35,000, is a question which involves several conflicting rules of law. On the one hand, a pleading filed in an earlier

case and offered in a later case as an admission or declaration against interest must allege matters of fact.

"It is the general rule that a statement of fact by a party in his pleading is an admission that the fact exists as stated * * *." Annot., 63 ALR2d 412, 415 (1959).

See also, 4 Wigmore, *supra*. The prayer is technically not a part of the cause of action and is typically a request or demand for damages or other relief, not an allegation of an operative fact in the case. *Andersen v. Turpin,* 172 Or 420, 432, 142 P2d 999 (1943); *Kerschner v. Smith,* 121 Or 469, 473, 236 P 272, 256 P 195, 196-97 (1927). On the other hand, the prayer may be regarded as the equivalent of a factual statement of the relief which the plaintiff claims or the amount of damage which she has sustained. See ORS 16.210 (c); 71 CJS 240, Pleading § 95 (b) (1951). The damage claim describes the plaintiff's own assessment of her injuries in terms of dollars, and would be so understood by anyone reading the pleading as a whole. As a general rule, the introduction of a statement in a pleading as an admission renders admissible all other portions of the pleading which tend to explain or qualify the portion received. 2 Jones on Evidence § 13:55 (Gard ed 1972). See ORS 41.880. *Also see Beck v. General Ins. Co.,* 141 Or 446, 18 P2d 579 (1933), noted in 12 Or L Rev 323 (1933), where this court held that the entire pleading should be considered in determining whether it contains an admission and the weight to which that admission is entitled. Note, 12 Or L Rev, *supra* at 325.

We feel that the court's ruling, under the facts of this case, which allowed introduction of the whole

pleading, was proper. The complaint was a single document and gave the jury a full and adequate understanding of plaintiff's statement of her injuries from the accident in Nevada. *See Kucza v. Stone,* 155 Conn 194, 197, 230 A2d 559, 561 (1967) (similar facts). Of course, a trial court may conclude in another case that the complaint contains statements in addition to the admission which are irrelevant to the admission itself and highly prejudicial to the case of the party against whom it is introduced; in such a case, the irrelevant or prejudicial matters may properly be excluded.

■ Plaintiff next assigns as error the court's refusal to permit plaintiff to disclose the amount of the settlement of the 1965 Nevada lawsuit, $2,500. Plaintiff cites no cases in support of this proposition.

Plaintiff sought to introduce the amount of the settlement to dispel the inference created by the complaint in the Nevada lawsuit that plaintiff received severe, permanent injuries in 1965. The plaintiff could have introduced other evidence having more probative value as to what plaintiff's injuries actually were as a result of the Nevada accident, such as the testimony of her treating doctor. The amount of a settlement may have had some bearing on the severity of plaintiff's injuries, but it might also have been the product of a number of other factors, such as a paucity of credible witnesses, a weak case on liability, or a lack of competent evidence of severe injury. A number of factors can cause a case to be settled but such factors have nothing to do with the severity of plaintiff's injuries. The record demonstrates that the trial court took these collateral factors into account in considering defendant's objection, and we are unable to say

that the court abused its discretion in excluding the amount of settlement from this case.

"* * * This balancing of intangibles—probative values against probative dangers—is so much a matter where wise judges in particular situations may differ that a leeway of discretion is generally recognized." McCormick, Law of Evidence § 185 (2d ed, Cleary, Gen Ed 1972).

■ Plaintiff next assigns as error the court's refusal to permit plaintiff to recross-examine witness William Adams, a claims representative of the Oregon State Accident Insurance Fund, concerning his notes of his interview with plaintiff concerning the claim she had filed.

■ It is apparent that Adams had his interview notes with him at trial, but the record discloses that Adams did not testify from his notes or refresh his memory therefrom. His testimony was from his independent memory of the interview. The notes were never introduced in evidence. As a general rule, a litigant may cross-examine an adverse witness concerning notes and testimonial aids only when it appears that the witness actually uses the notes to refresh his memory, either before or during trial. 3 Wigmore, *supra* at § 762-63. *See also, State v. Fuller,* 203 Or 608, 610, 280 P2d 980 (1955), where such cross-examination was denied where the doctor testified that he did not have the report in court and he was testifying from his recollection.

On direct examination Adams was asked:

"Q (By Mr. Samuels) Did she talk to you about an accident about driving over a divider?

"A In the course of our interview we normally ask the claimants of any pre-existing work accident

which they may have been involved in which could be related to the one I am investigating.

"Q Did she discuss with you an accident where she went over a divider?

"A She did.

"Q About the time I have mentioned, about six weeks, or so, —

"A Sometime February, '71.

"Q Did she discuss with you what her injuries were from that accident?

"A She related that she ran over a traffic separator on Southeast Powell somewhere in the vicinity of Ninth Street, and as a result of this she got permanent cervical and right shoulder strain or sprain."

This is the extent of witness Adams' relevant testimony on direct examination.

On cross-examination the witness was asked:

"Q Do you have your file with you, sir?

"A No, sir. I have my notes with me, my original notes.

"Q You didn't bring your file?

"A No, sir, I didn't bring my file."

On further cross-examination it developed that "the file somewhere is en route between our office and the Labor and Industries Building in Salem, Oregon." In other words, the file was not available. The witness was not asked to produce his original notes and no questions were put regarding his notes.

On redirect, witness Adams was asked to read what his notes said "about this accident where she went over the divider." However, before the witness responded, the question was withdrawn. After a colloquy between the court and counsel in chambers, the following occurred:

"MR. WELSH: Let's see, your Honor, where

that leaves us. That leaves us in the situation where I think even if this situation had not arisen, I would be entitled to examine him from his own notes.

"THE COURT: On redirect examination in the light of the cross-examination I think not, the question about the notes having been withdrawn."

Plaintiff relies solely on *Mannix v. The Portland Telegram,* 136 Or 474, 284 P 837, 297 P 350, 300 P 350 (1931). In *Mannix* it was contended "[t]hat the court erred in refusing defendant the right to cross-examine plaintiff concerning plaintiff's testimony that defendant had made prior attacks upon plaintiff." This court held:

"* * * Where an adverse witness gives testimony bearing upon a question directly in issue, cross-examination with respect to such testimony is a matter of right and a denial of that right is reversible error: [citations omitted]." 136 Or at 490-91.

*Mannix* does not support the position plaintiff urges in her assignment of error. In the case at bar, any questions by plaintiff, on recross-examination, concerning the notes themselves would have exceeded the scope of redirect examination. *See Still v. Benton,* 251 Or 463, 445 P2d 492 (1968), where this court upheld the trial court's decision to strictly limit the scope of recross-examination to the specific matters brought out on redirect.

Plaintiff also assigns as error the court's giving one of defendant's requested instructions and the failure to give one of plaintiff's requested instructions. Again, the plaintiff cites no cases in support of her position regarding these assignments of error. We have examined the instructions given and conclude

that the court adequately instructed the jury on all issues presented in the pleadings and the evidence offered. The jury was fully and fairly instructed, and we find no error was committed by the court in this respect.

Affirmed.

TONGUE, J., dissenting.

In this case defendant was permitted to offer, over plaintiff's objection, not only plaintiff's allegations of similar injuries in the complaint in a previous case, but a copy of the entire previous complaint filed by plaintiff against another defendant, so as to show not only the nature of the injury claimed by plaintiff in that case, but also the fact that plaintiff sought to recover $35,000 in that case in damages for such injuries. When, however, plaintiff sought to offer in evidence the fact that she actually received the sum of $2,000 on settlement of that case, defendant's objection was sustained.

In my view, while defendant was entitled to offer in evidence plaintiff's allegations of similar injuries in the complaint in the previous case, he was not entitled to offer in evidence the amount prayed for as damages in that complaint. Although that fact may have had some probative value to show the serious nature of the injuries claimed by defendant in that complaint, any such probative value was more than outweighed, in my opinion, by the collateral issues thus injected into the case, as well as by the prejudice to plaintiff. See McCormick on Evidence (2d ed) 438-41. *Kelty v. Fisher,* 101 Or 110, 118, 199 P 188 (1921).

If it be held that it was for the trial judge, in the exercise of his discretion, to resolve the balancing of those considerations, it is my view that the trial

judge was then required to admit in evidence plaintiff's testimony that she received only $2,000 upon settlement of that previous complaint.

Once the jury was informed by the defendant that plaintiff had filed a previous complaint praying for $35,000 in damages for the same injury, the jury was likely to draw the inference that as the result of having filed such a complaint, plaintiff probably received a substantial payment for such injuries.

It is true that unaccepted offers of compromise between the same parties are not generally admissible, not only for lack of relevance, but as privileged communications for reasons of public policy to encourage settlements. Consummated settlements with third persons, however, are sometimes admissible, depending upon the purpose for which such evidence is offered. McCormick on Evidence (2d ed) 664, § 274.

Because the question whether plaintiff had already received payment for the same injury was "opened up" to speculation by defendant's offer of the entire previous complaint in evidence, including its prayer for $35,000, I am of the opinion that plaintiff was entitled to show the amount actually received by her as a result of that complaint. Otherwise, we would be condoning a practice under which one party is permitted by the trial judge to strike a questionable blow, over the objection of the other party, whose hands are then tied by the trial judge, at the request of the first party, when he attempts to defend himself.

Because plaintiff was not permitted to offer that evidence I believe that she did not have a fair trial and would remand this case for a new trial.

HOWELL, J., joins in this dissent.