[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE OF DEFENDANT UNION LABOR LIFEINSURANCE COMPANY
The above-captioned action is one of nineteen class actions pending in this court against Colonial Realty Company and various related entities (Colonial Realty Company and all of its related entities are referred to collectively in this Decision as "Colonial"), the principals of Colonial, Jonathan Googel ("Googel"), Benjamin Sisti ("Sisti") and the Estate of Frank Shuch[1], professionals who represented Colonial, or were involved in the sale or financing of the various Colonial limited partnerships and other defendants. The plaintiffs allegedly purchased an interest in the Colonial Constitution Limited Partnership and bring this action on behalf of themselves and all others who also purchased such interests.
The defendant Union Labor Life Insurance Company ("ULLICO") has moved to strike Count XXX of the Amended Complaint dated November 20, 1995, the only count directed to ULLICO, for the reasons that it fails to state a cause of action under § 36-498 of the Connecticut General Statutes.
PROCEDURAL HISTORY
ULLICO was first served with the complaint in this action in December, 1993 Thereafter it filed a First Request to Revise seeking, among other things, specification of the conduct of ULLICO on which the plaintiffs based their allegations of a violation of § 36-498. After the court overruled various objections to the First Request to Revise, the plaintiffs filed an Amended Complaint dated June 20, 1995. Thereafter ULLICO filed a Second Request to Revise in which it again asked the plaintiffs to revise their complaint to specify the actionable acts or omissions of ULLICO and to remove allegations in which ULLICO is alleged to have taken action through one of the other defendants, including the Colonial Principals. Thereafter, the plaintiffs filed the Amended Complaint of November 20, 1995 at issue here.
On December 11, 1995 ULLICO filed the present Motion to Strike. Thereafter this court rendered decisions on the Motions to Strike filed by defendants Cummings Lockwood (January 2, CT Page 5163-U 1996), Equitable Companies, Inc. and Equitable Life Assurance Society of the U.S. (January 5, 1996) and Deloitte Touche LLP and Robert V. Lally (February 5, 1996).
ALLEGATIONS OF THE AMENDED COMPLAINT
The Amended Complaint of November 20, 1995, which will be referred to as the "Complaint", is more than 250 pages long and contains more than 500 paragraphs. The following is a summary of the allegations of the Complaint pertinent to the Motion to Strike at issue here.
Colonial Limited Partnership Transactions
During the 1980's Googel, Sisti, and Shuch promoted a series of real estate ventures which culminated in the Colonial Realty bankruptcy collapse in 1990. Each of the ventures consisted of the same set of transactions: (1) the formation of a limited partnership to acquire real estate; (2) the sale of interests in the limited partnership to investors; and (3) the limited partnership obtaining a loan using investor notes as collateral.
During 1988 Colonial/USA Corp. purchased a parcel of real estate in Hartford, Connecticut known as Constitution Plaza. ¶ 107.1.1. Between September, 1989 and August, 1990 Colonial offered 1200 interests of limited partnership interest in Constitution at a price of $50,000. ¶ 107.1.15. Colonial marketed these interests using standard documents consisting of a "Glossy Brochure" and a "Private Placement Memorandum" ("PPM") which would purport to describe the investments. ¶ 54. Investors in Colonial Constitution were told that upon sale of the underlying property, investors would receive approximately 300% return on each unit purchased. ¶ 72. In connection with their offer and sale of limited partnership interests in Constitution Colonial collected fees aggregating more than $17 million out of total proceeds of $60 million. ¶
The PPM given to investors contained various misrepresentations including the representation that the general partners of Colonial Constitution Limited Partnership had a collective net worth in excess of $75 million. ¶ 107.5.5. In calculating the foregoing net worth figure, contingent liabilities in excess of $75 million that had been incurred by Googel, Sisti, and Shuch as guarantors of other Colonial real estate syndications were counted as zero. ¶ 107.5.9. The PPM CT Page 5163-V also failed to disclose the enormous size of the fees to be collected by Colonial and contained projections of future income for the real estate owned by the limited partnership which were based on the assumption that such income would increase at unrealistically high rates. The PPM for Constitution was more than 100 printed pages long and contained at least 100 pages of exhibits. ¶ 107.1.23. The Colonial Entities drafted the Colonial Constitution PPM in such a way that it appeared to put purchasers on notice that an investment in Constitution involved substantial risks. However, the PPM was prepared not for the purpose of making full disclosure of all material facts relating to Colonial Constitution, but instead, for the purpose of insulating Colonial and its principals from liability. ¶ 107.1.29.
Colonial sold limited partnership interests from the mid 1970's until 1990. Investors in earlier partnerships were not paid their annual cash flow guarantees from earnings generated by their investments, but rather from funds contributed by investors in later partnerships. Colonial and its principals were able to transfer monies belonging to one limited partnership to their own accounts, or the accounts of other limited partnerships because they failed to maintain the integrity of segregated bank accounts for each limited partnership. Such a "pyramid" organization (also referred to in the Complaint as a "ponzi scheme"), could only succeed as long as the later partnerships attracted new capital so older guarantees and debts owed with respect to earlier limited partnerships could be paid off.
Allegations as to ULLICO
While the Complaint does contain specific allegations as to certain defendants[2], the allegations as to ULLICO are almost without exception legal conclusions based largely on the factually unsupported allegations that various other defendants were "agents, or joint-venturers, or partners" of ULLICO.
The only factually based allegations against ULLICO are contained in paragraphs 159 and 561 of the Complaint, which allege that in November 1989, Herb Canapary of ULLICO received the PPM for Constitution (¶ 159) and:
 Defendant ULLICO beginning in 1990 through August of 1990 by itself and through its agents and joint venturers and partners IMC (U.S. Note Corporation) CT Page 5163-W and AFU, in ways such as those set out in paragraph 159 and its subparts above, materially assisted, by aiding and abetting the primary securities violation of the Colonial Entities who offered or sold interest in Constitution in violation of Conn. Gen. Stat. § 36-485 (in violation of Conn. Gen. Stat. § 36-498(a)(1), and Conn. Gen. Stat. § 36-498(a)(2) as set forth in this Complaint, by, among other things, providing said Colonial Entities with 3.7 million dollars of financing in approximately August of 1990.
¶ 561.
Paragraph 159 also contains allegations that before the closing date of the loan to Constitution (but obviously after Colonial had already sold the limited partnership interests in Constitution) ULLICO had notice that scores of investors who had purchased limited partnership interests in Constitution did not meet minimum financial requirements of the Securities and Exchange Commission, that certain of the investor notes were forged, and that many of the investor notes did not comply with ULLICO's own underwriting policies.
LEGAL ANALYSIS
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989); Mingachos v. CBS. Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros. Inc. v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990); Blancato v. Feldspar Corp., 203 Conn. 34,36, 522 A.2d 1235 (1987).
The court should view the facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly probable under them. Dennisonv. Klotz, 12 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts, and those necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich v. Silverberg,200 Conn. 367, 370, 511 A.2d 336 (1986).
ULLICO has moved to strike the complaint on the following CT Page 5163-X grounds:
a) All of ULLICO's alleged conduct took place before the amendment to Connecticut General Statutes § 36-498(a)(2) which extended liability to "aiders and abettors."
b) All of ULLICO's alleged conduct took place after the plaintiffs had already purchased their limited partnership interests and, therefore, ULLICO's conduct was not in connection with any sale of securities.
c) ULLICO's alleged conduct does not constitute "material assistance."
d) ULLICO may not be held liable for the conduct of others under the plaintiffs' allegations of "agency," "partnership" or "joint venture" because those allegations are legal conclusions without any factual underpinning.
e) The Complaint is barred by the statute of limitations.
Statute of Limitations
ULLICO argues that this action is barred by the statute of limitations contained in § 36-498(f).
Section 36-498(f) provides:
 (f) No person may bring an action under this section more than two years after the date of the contract of sale or of the contract for investment advisory services, except that (1) with respect to actions arising out of intentional misrepresentation or fraud in the purchase or sale of any interest in any limited partnership not required to be registered under the Securities Act of 1933, no person may bring an action more than one year from the date when the misrepresentation or fraud is discovered, except that no such action may be brought more than five years from the date of such misrepresentation or fraud provided, with respect to an action pending on July 1, 1993, that asserts facts upon which a claim could be asserted under this section on and after July 1, 1993, and which claim is asserted prior to January 1, 1994, no such action may be brought for intentional CT Page 5163-Y misrepresentation or fraud that occurred more than five years prior to the date of the filing of the complaint in such action, and (2) with respect to actions arising out of intentional misrepresentation or fraud in the purchase or sale of securities other than securities described in subdivision (1) of this subsection, no person may bring an action more than one year from the date when the misrepresentation or fraud is discovered or in the exercise of reasonable care should have been discovered, except that no such action may be brought more than three years from the date of such misrepresentation or fraud.
ULLICO did not become a defendant in this action until December, 1993, when it was served with a complaint in this action.
Section 36-498(f) provides a one year/five year limitation period in "actions arising out of intentional misrepresentation or fraud in the purchase or sale of any limited partnership not required to be registered under the Securities Act of 1933". This is clearly an action to which the one year/five year limitation applies. Under that portion of the statute, "no person may bring an action more than one year from the date when the misrepresentation is discovered, except that no such action maybe brought more than five years from the date of suchmisrepresentation or fraud." (Emphasis added.)
Although CUSA and the federal securities laws are not identical, in interpreting CUSA it is instructive to look to rulings of the federal courts interpreting federal securities law, particularly where the language of CUSA is similar to that of the federal law. Connecticut National Bank v. Giacomi,233 Conn. 304, 322, ___ A.2d ___ (1995).
In Lampf, Pleva, Lipkind, Prupis Petigrow v. Gilbertson,501 U.S. 350 (1991) the United States Supreme Court considered the limitation period applicable to claims under the Securities Exchange Act, § 9(e) of the 1934 Act, which provides:
 No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation. CT Page 5163-Z
The Court held that the doctrine of fraudulent concealment was inapplicable to the one year/three year statute of limitations, stating, "it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1-and 3-year structure. The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling. . . .Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to the period." 501 U.S. at 363.
Other federal courts have held that the one year/three year limitation period requires an action to have been brought within the period of "the earlier of one year from the date the fraud was or reasonably should have been discovered or three years from the date of the transaction." Henley v. Slone, 961 F.2d 23, 24
(2d Cir. 1992); Ceres Partners v. Gel Associates, 918 F.2d 349,364 (2d Cir. 1990).
The same analysis applies to the one year/five year limitation in § 36-498(f). There is a dispute between the parties as to when the alleged fraud was discovered. However, since the five year period is a period of repose, or an outside limit, the date of the discovery of the fraud is irrelevant if the complaint is not filed within five years from the date on which the fraud occurred. In this case the plaintiffs allegedly purchased the limited partnership interests in December, 1989, which is within five years of the date on which the action was commenced against ULLICO.
ULLICO argues that the Complaint should be stricken because it was not commenced within one year of the discovery of the fraud. The plaintiffs have affirmatively indicated in the Complaint that they discovered Colonial's fraud in September of 1990, yet did not commence this action against ULLICO until almost three years later. Under Forbes v. Ballaro, 31 Conn. App. 235,624 A.2d 389 (1993), the plaintiffs are entitled to a further opportunity to plead fraudulent concealment with respect to the date of his discovery of the fraud. The court declines to strike this Complaint on the basis that it was filed more than one year after discovery of fraud.
Secondary Liability
The plaintiffs have sued ULLICO only under the Connecticut CT Page 5163-AA Uniform Securities Act (CUSA), Connecticut General Statutes § 36-498[3], alleging that ULLICO "materially assisted" Colonial in offering and selling limited partnership interests by means of a securities violation. Both § 36-498(c) and § 36-498(a)(2) include liability for those who materially aid or abet a violation of CUSA, often referred to as secondary liability. ULLICO contends that it does not fall within the narrow category of those who can be secondarily liable under § 36-498(c). It further claims that prior to the amendment to § 36-498(a)(2) by Public Act 93-169 that section did not expressly provide for liability of those who "materially assisted" in a securities violation, all of its actions about which the plaintiffs complain took place prior to the aforementioned amendment and, therefore, it cannot be liable under § 36-498(a)(2).
Section 36-498(c)
Section 36-498(c) provides:
 (c) Every person who directly or indirectly controls a person liable under subsections (a) and (b) of this section, every partner, officer or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the act or transaction constituting the violation and every broker-dealer or agent who materially aids in the act or transaction constituting the violation are also liable jointly and severally with and to the same extent as such person, unless the person who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There shall be contribution as in cases of contract among the several persons so liable.
Unlike § 36-472 and § 36-498(a) prior to the 1993 amendment by Public Act 93-169, § 36-498(c) explicitly imposes liability upon aiders and abettors. Connecticut NationalBank v. Giacomi, 233 Conn. 304, 326, ___ A.2d ___ (1995).
The plaintiffs allege that ULLICO is liable under § 36-498(c) as an "agent," "partner," and a "person occupying a similar status or performing similar functions" as Colonial. For the reasons set CT Page 5163-BB forth below the court holds that the Complaint does not contain a cognizable claim that ULLICO acted as an agent, partner or person occupying similar status or function as Colonial who materially assisted a transaction which constituted a securities violation.
Section 36-498(c) is based on § 410(b) of the Uniform Securities Act and has no federal counterpart. In ConnecticutNational Bank v. Giacomi, 233 Conn. 304, 326, ___ A.2d ___ (1995) the Supreme Court examined decisions in other states which have adopted § 410(b) of the Uniform Securities Act:
 The Supreme Court of Alabama has recognized that Alabama's version of § 410(b) is "substantially different and . . . considerably broader than § 12 of the Securities Act of 1933. Subsection (b) imposes liability on a group of participants in securities transactions beyond the seller." Foster v. Jesup Lamont Securities Co., 482 So.2d 1201, 1207 (Ala. 1986). In Foster, the court emphasized the difference between the various forms of express secondary liability under Alabama's version of § 410(b), identifying that the subsection independently extends liability to persons who "`are included on the basis of what may be considered an express statutory aiding and abetting theory.'" Id., quoting J. Rediker, "Alabama's `Blue Sky Law — Its Dubious History and Its Current Renaissance," 23 Ala.L.Rev. 667, 714 (1971). Similarly, the Court of Appeals for the Eighth Circuit adopted the rationale of the Foster decision to conclude that Arkansas' version of § 410(b) "expressly creates two types of secondary liability for securities fraud, control person liability and aiding and abetting liability." Arthur Young Co. v. Reves, 937 F.2d 1310, 1325-26 (8th Cir. 1991), aff'd, ___ U.S. ___, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).
233 Conn. at 326-327.
Aside from the references to § 36-498(c) in Giacomi,
neither the Supreme Court nor the Connecticut Appellate Court has construed that section. Thus, it is necessary to look to the language of CUSA and the construction of similar statutes by other states.
Section § 36-471(2) defines "agent" as "any individual, CT Page 5163-CC other than a broker-dealer or issuer, who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities." "Issuer" is defined as "any person who issues or proposes to issue an security." § 36-471(8).
Colonial is clearly alleged to be the "issuer" of the limited partnership interests in the various limited partnerships, which interests are "securities" under § 36-471(13). The Complaint contains no facts from which it could reasonably be inferred the ULLICO represented Colonial in effecting or attempting to effect the sale of the limited partnership interests. It alleges only that ULLICO used certain investor notes for collateral for a loan to Colonial after the sale of limited partnership interests had already occurred. Therefore it does not allege that ULLICO was the agent of Colonial for the purposes of § 36-498(c).
The conclusory allegations that ULLICO and/or Colonial and/or other defendants were engaged in a "joint venture" or "conspiracy" or "partnership" is not a substitute for a specification of acts or omissions on which the plaintiff's claims rest. Ross v. A.H. Robins Co. Inc., 607 F.2d 545, 557-8
(2d Cir. 1979), cert. denied, 446 U.S. 946 (1980). In Ross the Court held that a plaintiff alleging fraud in connection with a securities transaction must specify the acts or omissions upon which its claim rests and stated:
 It will not do merely to track the language of Rule 10b-5 and rely on such meaningless phrases as "scheme and conspiracy" or "plan and scheme and course of conduct to deceive." Id.
Thus, while the Complaint contains many conclusory references to ULLICO as a partner or agent or joint venturer of Colonial or other defendants, the only factual allegations of the complaint are that ULLICO made a loan to Colonial after Colonial had already sold limited partnership interests and had knowledge of irregularities in investor notes prior to making that loan but after the sale of the limited partnership interests had occurred. There is nothing contained in those allegations which brings ULLICO within the class of persons who can be liable under § 36-498(c).
Section 36-498(a)(2)
The plaintiffs also claim that the Complaint states a cause CT Page 5163-DD of action against ULLICO under § 36-498(a)(2), which provides:
 (a) Any person who: (2) offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security. . .
Inasmuch as neither the Connecticut Supreme Court nor the Appellate Court has determined what must be plead in order to assert a claim under § 36-498(a)(2), this court must look to the language of the statute itself. Giacomi, 233 Conn. at 318. The language of the statute appears to require the following five elements:
1) the plaintiff was the "person buying the security";
2) someone "offers or sells a security by means of fraud or misrepresentation";
3) the defendant "materially assisted" such person who offers or sells a security by means of fraud or misrepresentation;
4) the defendant "knew or in the exercise of reasonable care should have known of the untruth or omission"; and
5) the plaintiff "buyer did not know of the untruth or omission."
The Complaint alleges that the plaintiffs were the "persons buying the security". Section 36-471(13) includes limited partnership interest within the meaning of "securities." It also alleges that Colonial offered or sold securities by means of fraud or misrepresentation. The court must determine whether the Complaint alleges facts which support its legal conclusion that ULLICO "materially assisted Colonial" in the sale of the limited CT Page 5163-EE partnership interests.
Neither the Supreme Court nor the Appellate Court of the State of Connecticut has considered what constitutes "material assistance" under § 36-498. Only a handful of courts have considered the meaning of that phrase under statutes analogous to § 36-498.
In Arthur Young Co. v. Reves, 937 F.2d 1310, aff'd, ___ U.S. ___, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Eighth Circuit Court of Appeals approved of a definition of materiality which was based on a "reasonably foreseeable" standard. It found that the lower court's instruction to the jury that representations or omissions were material if they were "of the kind and nature that a reasonable person would forseeably rely on." 937 F.2d at 1325-1326.
In Price v. Brydon. 764 P.2d 1370 (1988), the Supreme Court of Oregon interpreted ORS59-115(c), a portion of the Oregon Securities Act which is similar to § 36-498(c). The Court held that "materiality depends on the importance of one's personal contribution to the transaction." 764 P.2d at 1371.
In Foster v. Jesup Lamont Securities Co., 482 So.2d 1201,1207 (Ala. 1986), cited by the Court in Giacomi, the Court held that conduct need not be a substantial factor in producing a particular sale in order to "materially aid" it. Aid is "material" it is "`has a natural tendency to influence, or was capable of influencing, the decision of'" the purchaser. Kungysv. United States, 485 U.S. 759, 770 (1988).
The only manner in which ULLICO is alleged to have materially assisted Colonial is that it made a loan to Colonial in August, 1990 using investor notes as collateral.
CUSA provides a remedy for injuries caused by deceptive purchases and sales of securities. Russell v. Dean WitterReynolds. Inc. 200 Conn. 172, 181, 510 A.2d 972 (1986). While liability for material assistance may not require the defendant's actual sale of a security or direct involvement with investors,In Re Ivan F. Boesky Securities Litigation, 669 F. Sup. 659, 661
(S.D.N.Y. 1987), it does require the defendant's "ample involvement and substantial assistance in accomplishing the violations charged," Id. CT Page 5163-FF
Since CUSA prohibits the material assistance of a fraudulentsale of securities, the alleged conduct of ULLICO which occurred after the sale cannot be said to have materially assisted the sale. see Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).
ULLICO's alleged failure to properly investigate the notes it used for collateral cannot constitute material assistance under § 36-498(a)(2) or § 36-498(c). Failure to act has not been held to be a basis for aider and abettor liability absent a duty to act. "Where the alleged substantial assistance consists of a failure to act, courts are hesitant to hold the aider liable absent a duty to act." National Union Fire Ins. Co. ofPittsburgh, P.A. v. DeLoach, 708 F. Sup. 1371, 1382 (S.D.N Y 1989). Therefore, the Complaint fails to state a cause of action under § 36-498(a)(2).
Since material assistance is also required for liability under § 36-498(c), even if the Complaint alleged that ULLICO was within the class of persons covered by § 36-498(c), it would still fail to state a cause of action against ULLICO.
The Complaint also fails to state a cause of action under § 36-498(a)(2) because it does not contain factual allegations that ULLICO "knew or in the exercise of reasonable care should have known of the untruth or omission" of Colonial in connection with the sale of the limited partnership interests.
The parties disagree as to the standard of intent or the degree of knowledge required by the statute. In Giacomi the Supreme Court noted the rule that had been applied in determining aider and abettor liability under the federal securities laws:
 The trial court applied a three-pronged test to determine that the defendants had established CNB's liability as an aider and abettor in this case. It stated that "[i]n general . . . a party must prove three elements in order to impose aiding and abetting liability. `(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) "knowledge" of this violation on the part of the aider and abettor; and (3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.' [International Investment Trust] v. Cornfeld, 619 F.2d 909, 922 (2d Cir. 1980)." CT Page 5163-GG
233 Conn. at 315.
In order to survive a motion to strike, the plaintiff "must plead the specific details of the knowledge of each aider and abettor of the primary fraud. . .," and while it is unrealistic to expect plaintiffs to plead a defendant's actual knowledge, they "must nevertheless set forth those events which they assert give rise to a strong inference that the defendant had knowledge of the underlying wrong." Harris v. Wells, 1991 U.S. Dist. LEXIS 1994, at *6-8 (D.Conn. Feb. 6, 1991). The facts alleged must give rise to a "strong inference" of fraudulent intent. In reTime Warner Inc. Sec. Litig., 9 F.3d 259 (2d Cir. 1993), cert.denied, 114 S.Ct. 1397 (1994). A plaintiff's case against an aider or abettor must not rest on a bare inference that the defendant "must have had" knowledge of the facts. Barker v.Henderson, Franklin, Starnes Holt, 797 F.2d 490, 497 (7th Cir. 1986). An alleged aider and abettor may not be held liable without proof that he acted with scienter. Id. at 495.
The legislative history of Public Act 93-169, which added express "material assistance" liability to § 36-498(a)(2), indicates that the legislature intended that something more than negligence was required as a prerequisite to liability for material assistance. Senator Jepsen, the Senate sponsor of the bill, state that the "knew or should have known language" was to be understood as follows"
 [T]he intention of this law is not to hook or bring in anybody who is innocent by materially assist. They would have to, like the perpetrators of the crime, have to have been aware of the fact that they are intentionally misrepresenting the contents of the securities or of the limited partnership,
so this does not create a new liability for anyone who is an innocent — and by innocent I mean was that they may have been negligent, by innocent I mean even if they were negligent, they were not intentionally perpetrating this kind of fraud.
36 S. Proc., Pt. 9, 1993 Sess., pp. 3308-09, remarks of Senator Jepsen.(Emphasis added). Senator Jepsen further discussed the subject of intent in a subsequent exchange with Senator Smith:
SENATOR SMITH:. . .[S]o then I understand it that CT Page 5163-HH there needs to be intentional or some disregard for obvious facts that rise as to something approaching an intentional standard for professionals who were materially involved in the transaction to be subject to liability.
SENATOR JEPSEN: That is correct.
Id. at 3310; see also id., Remarks of Senator Nickerson (noting that he would not have supported the bill absent Senator Jepsen's clarification).
The Complaint contains the conclusory allegation that the ULLICO "knew or in the exercise of reasonable care should have known" of Colonial's misrepresentations to investors. However, the only factual allegations bearing on ULLICO's knowledge regarding such alleged misrepresentations is that ULLICO possessed the marketing documents for the syndication of Constitution, including the PPM and glossy brochure, and reviewed such documents and that it had knowledge of certain alleged problems with the investor notes and failed to properly investigate the investors prior to using their notes as collateral.
Without more, receipt and review of offering materials cannot be translated into knowledge of misrepresentations contained therein. The Complaint alleges that the plaintiffs reviewed and relied on the same materials. If such a review alone could give the reviewer knowledge of the primary fraud, then the plaintiff could not maintain an action under § 36-498(a)(2), which requires that the plaintiff prove that he did not know of the fraud of the securities seller.
The only other knowledge by ULLICO alleged in the Complaint is knowledge of problems with the investors notes and noteholders. However, such knowledge did not arise until after the investors had purchased the limited partnership interests. "[O]ne cannot aid and abet a fraudulent securities transaction after it has been completed . . . In order to constitute substantial assistance in the accomplishment of the primary violation, the defendant would have had to act or omit to act in breach of a duty to the plaintiffs prior to the sale of the securities." Andreo v. Friedlander, Gaines Cohen, Rosenthal Rosenberg, 1986 WL 15663 (D.Conn.) at p. 7 (citing Mendelsohn v.Capital Underwriters, Inc., 490 F. Sup. 1069 (D. Cal. 1979); CT Page 5163-IIMorgan v. Prudential Funds, Inc., 446 F. Sup. 628 (S.D.N.Y 1978). Mere knowledge of a violation alone, without assistance or duty to disclose the violation, is not an actionable wrong. Monsen v.Consolidated Dressed Beef Co., 579 F.2d 793, 800 (3rd Cir.),cert. denied sub nom. First Pennsylvania Bank, N.A. v. Monsen,439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).
ULLICO argues that the prohibition against material assistance in § 36-498(a)(2)does not apply retroactively, and has advanced that as an alternate ground for striking the Complaint. Section 36-498(a)(2) was amended by Public Act 93-169 in 1993. Prior to that amendment the statute provided:
 (a) Any person who: (2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security. . .
The language "or materially assists any person who offers or sells" was added by the 1993 amendment. Prior to the amendment, then, the statute did not contain any explicit reference to aiding and abetting liability. All the actions of ULLICO about which the plaintiff complains occurred well before 1993. Therefore, under a prospective application of the amendment, ULLICO would appear to have no liability.
The plaintiffs contend that the amendments to § 36-498(a)(2) did not substantively change that statute, but merely clarified it. If that is the case, then the retrospective application of the material assistance prohibition in that statute is proper.Roberts v. Caton, 224 Conn. 483, 619 A.2d 844 (1993); Darak v.Darak, 210 Conn. 462, 468, 556 A.2d 145, (1989).
In determining whether an act should be characterized as clarifying legislation, the court must look to the legislative history to determine legislative intent. Darak v. Darak,210 Conn. 462, 471, 556 A.2d 145 (1989); State v. Blasko, 202 Conn. 541, CT Page 5163-JJ 558, 522 A.2d 753 (1987). The legislative history of Public Act 93-169 reveals that certain key legislators believed that the amendment was merely a clarification and not a substantive change to § 36-498(a)(2).
Representative Richard Tulisano, the Chair of the House Judiciary Committee and the sponsor of the amendment, responded to a question by Representative Farr as to the liability of "someone who materially assisted prior to the adoption of this act" by expressing his belief that § 36-498(a)(2) already encompassed aiding and abetting liability prior to the amendment:
 I'm not sure how material assistance was interpreted prior to this. . .I would have brought a claim against them anyway if they were materially involved, frankly, and thought they would have come under it, this [the amending language] makes it clear. But I can't tell you that was absolute before.
36 H.R. Proc. Pt. 17, 1993 Sess., p. 6092.
Representative Farr then further inquired of Rep. Tulisano:
 . . .is it the intent to change the law retroactively so that it affects the conduct it will affect the conduct of someone under the new language, or is it the intent to clarify what you believe to be existing language. . .
Id.
Rep. Tulisano replied:
 . . .It is not to change the law, but to clarify what I would consider the law because they're a participant anyway. It's not to say something different.
Id. at 6093.
The Supreme Court's treatment of the claim of aiding and abetting liability under § 36-498(a)(2) in Giacomi also makes it impossible for this court to accept ULLICO's argument that that statute did not provide for aiding and abetting liability prior to the 1993 amendment. In that case the Court held that § 36-472 did not include implied aider and abettor liability. CT Page 5163-KK233 Conn. at 328. But the Court implied that such liability could exist under the pre-1993 § 36-498(a)(2).
In Giacomi all of the relevant conduct occurred before 1993. The defendants argued that even if § 36-472 did not include aider and abettor liability, the judgment of the trial court, which had found the plaintiff bank liable as an aider and abettor, could be sustained under § 36-498(a) and (c). The court stated:
 Although we do not dismiss the argument that, in a proper case, § 36-498(a) or (c) might provide a sufficient legal basis for sustaining aider and abettor liability, the trial court did not articulate a factual basis sufficient for this court, sua sponte, to find CNB liable under either § 36-498(a) or (C). 233 Conn. at 333.
. . .
 In 1993, however, the legislature amended § 36-498(a) to extend liability, inter alia, to a party who "offers or sells or materially assists any person who offers or sells a security. . . ." Public Acts 1993, No. 93-169. The trial court noted that this amendment did not affect its analysis of the case because "[No. 93-169 of the 1993 Public Acts] merely clarifies a liability that was, in fact, in existence long before CUSA was originally enacted in 1977." The defendants concur in this assessment, arguing that the amendment does not affect the validity of their affirmative defenses under § 36-498(g) because the amendment clarified the existence of, rather than created, aider and abettor liability under CUSA. CNB asserts, on the contrary, that the amendment created aider and abettor liability and, therefore, that the defendants' pre-1993 promissory notes may not be avoided on the basis of § 36-498(a).
 Subsection (a) of § 36-498 does not provide us with a basis upon which to affirm the trial court's decision. Although both CNB and the defendants argue that the effect of the 1993 amendment is important to this case, we need not decide the amendment's effect because the defendants' claims must fail CT Page 5163-LL regardless of whether this subsection provided for aider and abettor liability prior to 1993. 233 Conn. at 335.
Where the only Supreme Court interpretation of § 36-498(a)(2) clearly leaves open the possibility that that statute included aider and abettor liability prior to the 1993 amendment, this court cannot rule that it did not. Therefore, the argument that § 36-498(a)(2) did not prohibit material assistance prior to 1993 is not a basis for striking the complaints in this case.
Primary Liability
In their Objection to ULLICO's Motion to Strike the plaintiffs argue that the Complaint not only states a cause of action against ULLICO for aiding and abetting liability, but also for primary liability as one who offered or sold securities by means of untrue statements and omissions and in violation of SEC registration requirements. The plaintiffs essentially argue that the Complaint alleges that other defendants, i.e. the Colonial Entities, committed primary violations (which it does), it also alleges that ULLICO was the partner, joint-venturer or conspirator of the alleged primary violators and, therefore, ULLICO is liable for a primary violation. As stated above, there are absolutely no factual allegations as to when, where, how or whether ULLICO ever entered into any partnership, joint venture or any other agreement with any alleged primary violator to sell limited partnership interests in Constitution or any other limited partnership. The plaintiffs are attempting to augment the paucity of factual allegations against ULLICO by means of conclusory allegations of partnership, joint venture, etc. However, as stated above, conclusory allegations that ULLICO and/or Colonial and/or other defendants were engaged in a "joint venture" or "conspiracy" or "partnership" is not a substitute for a specification of acts or omissions on which the plaintiffs' claims rest. Ross v. A.H. Robins Co. Inc., 607 F.2d 545, 557-8
(2d Cir. 1979), cert. denied, 446 U.S. 946 (1980).
CUSA creates liability in those who offer or sell securities my means of untrue statements or omissions or in violation of securities laws and in those who materially assist in such offer or sale. It does not create liability in anyone who in any way benefits from such offer or sale. The Complaint alleges that ULLICO benefited from its loan to Constitution, but it does not allege sufficient facts to state a cause of action against ULLICO CT Page 5163-MM for violation of CUSA.
For the reasons set forth above the Motion to Strike is granted.
By the court,
Aurigemma, J.