Argued and submitted May 4, the decision of the Court of Appeals and judgment of the circuit court reversed and remanded to circuit court for further proceedings November 30, 1988

## PRINCE,
*Plaintiff (Below),*

*and*

## LITTLEFIELD,
*Petitioner on Review,*

*v.*

## BRYDON et al,
*Defendants (Below),*

*and*

## HANSEN,
*Respondent on Review.*

## (TC 8312-07715; CA A41261; SC S34927)

764 P2d 1370

Gary M. Berne, Portland, argued the cause for petitioner on review. With him on the petition were Robert J. McGaughey and Stoll, Stoll, Berne, Fischer, & Lokting, P.C., Portland.

Ridgeway K. Foley, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, argued the cause for respondent on review.

LINDE, J.

## LINDE, J.

Plaintiff, Brad Littlefield, seeks to hold defendant John R. Hansen, Jr. (the other parties named in the title are not involved in this appeal) liable for losses that plaintiff suffered as a result of purchasing in Oregon a limited partnership in an Idaho partnership that had not been registered as a "security" as required under the Oregon Securities Act, ORS 59.055. Hansen's role was that of a lawyer preparing documents and performing other legal services for the partnership, and the issue is whether he can be held liable as one who "participates or materially aids" in the unlawful sale of the security under ORS 59.115(3) unless he establishes lack of knowledge as an affirmative defense. The circuit court granted summary judgment for defendant, and the Court of Appeals affirmed. *Prince v. Brydon,* 89 Or App 203, 748 P2d 158 (1988). We reverse that decision and remand the case to the circuit court for further proceedings.

As summarized in the opinion of the Court of Appeals, the partnership was formed in 1980 in Idaho to mine and sell barite for the oil industry. Defendant, an Idaho lawyer, was the partnership's attorney and advised it concerning the requirements for private placement of limited partnership units, one of which plaintiff bought in Oregon. "Defendant drafted the limited partnership agreement and major portions of the offering circular. He also gave an opinion on the tax status of the partnership, which [the partnership] included in the information that it provided prospective investors." 89 Or App at 206. Hansen knew that a partner who lived in Oregon intended to sell units there, but there is disagreement whether he told this partner about the requirements of Oregon Law. *Id.*

ORS 59.115(3) provides:

> "Every person who directly or indirectly controls a seller liable under subsection (1) of this section, every partner, officer, or director of such seller, every person occupying a similar status or performing similar functions, and every person who participates or materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the nonseller sustains the burden of proof that the nonseller did not know, and, in the exercise of reasonable care, could not have known, of the existence of the facts on which the liability is based."

The Court of Appeals noted that the words of the statute apply to defendant:

> "A lawyer who prepares the legal documents necessary for the creation of the entity whose securities are sold, prepares the offering statement for that sale or gives an opinion on the entity's tax status—all of which are routine parts of a securities practice—has materially aided in the sale. Without those actions, a sale cannot occur."

89 Or App at 206. In the court's view, however, the law should not be taken literally, and more than preparation of documents was needed for liability for "participating" or "materially aiding" under the statute.

The Court of Appeals recognized that in our only previous Securities Act decision involving a lawyer, the lawyer's services in the preparation of securities had made him potentially liable under ORS 59.115(3). *Adams v. American Western Securities,* 265 Or 514, 510 P2d 838 (1973). But the court found language in *Adams* from which it concluded that the decision rested on the lawyer's actions beyond those performed in his role as a lawyer, and it therefore distinguished the present case from *Adams* on grounds that defendant gave legal advice but did not know of or aid a "scheme to make illegal sales in Oregon." 89 Or App at 207. We do not believe *Adams* made that distinction.

ORS 59.115(3) makes one who is not himself the seller of a security liable for an unlawful sale if he "participates or materially aids in the sale." "Participate" and "materially aids" are separate concepts, not synonyms. A person may participate without materially aiding or materially aid without participating. Whether one's assistance in the sale is "material" does not depend on one's knowledge of the facts that make it unlawful; it depends on the importance of one's personal contribution to the transaction. Typing, reproducing, and delivering sales documents may all be essential to a sale, but they could be performed by anyone; it is a drafter's knowledge, judgment, and assertions reflected in the contents of the documents that are "material" to the sale.

One passage in *Adams* referred to federal cases under ORS 59.115(3) (before its 1967 amendment) and under Section 10(b) of the Securities Exchange Act of 1934, 15 USC § 78j(b), and said, in passing, that "some statements in those

opinions may be overly broad, if literally applied." 265 Or at 527-28. The quoted passage on its face only stated a possible question, not a conclusion. Perhaps more important, the *Adams* opinion (265 Or at 530) observed that if a lawyer who prepared important documents and corporate minutes and supervised the printing of debentures were not covered by ORS 59.115(3),

> "any lawyer or anyone else who, with full knowledge of the unlawful 'solicitation of an offer to purchase' an unissued and unregistered security, proceeds to make the further arrangements necessary for issuance and delivery of such a security, would have a complete defense, regardless of whether the security was ever subsequently registered."

The point of the quoted sentence is that if such acts by a lawyer did not constitute "material aid" in the sale, the lawyer would not be liable even if he had full knowledge of the unlawful transaction. The sentence in no way implies that "material aid" depends on knowledge.

■ Knowledge becomes an element of liability only in the form of an affirmative defense, to be proved by a nonseller, that he "did not know, and, in the exercise of reasonable care, could not have known, of the existence of the facts on which the liability is based."[1]

The drafters took pains to make clear that the relevant knowledge is of "the existence of the facts," not of the unlawfulness of a sale. These provisions may place upon persons besides a seller's employees or agents who materially aid in an unlawful sale of securities a substantial burden to exonerate themselves from liability for a resulting loss, but this legislative choice was deliberate. The 1967 revision of the Oregon Securities Act substituted, in ORS 59.115(3), the words "every person who participates or materially aids in the sale" for the words "every employee of such a seller * * * and every broker-dealer or agent who materially aids in the sale" in section 410(b) of the Uniform Securities Act, on which the revision was based. The possible liability of a lawyer who

---

[1] We take the drafters to have meant "could not have known by exercising reasonable care," not that a defendant might have taken reasonable care to be unable to know, as the words literally say.

prepares a prospectus was raised in Senate Judiciary Committee hearings on the revision in the 1965 session, and the witness for the drafters responded that the bill "makes clear that a person who does not know of a violation is not liable." The defense against strict liability, in short, was to be a showing of ignorance, not the professional role of the person who renders material aid in the unlawful sale. Accordingly, it was error to grant defendant summary judgment as a matter of law.

The decision of the Court of Appeals and the judgment of the circuit court are reversed, and the case is remanded to the circuit court for further proceedings.