Argued and submitted November 18, 1996; resubmitted In Banc September 4, affirmed September 17, 1997

William R. GRANEWICH, II,
*Appellant,*

*v.*

Ben HARDING;
Jeannie Alexander-Hergert;
Founders Funding Group, Inc.,
an Oregon corporation,
*Defendants,*

*and*

Michael J. FARRELL;
and Martin, Bischoff, Templeton,
Langslet & Hoffman, a partnership,
*Respondents.*

(9401-00097; CA A88174)

945 P2d 1067

James R. Cartwright argued the cause and filed the briefs for appellant.

Thomas W. Brown argued the cause for respondents. With him on the brief were Wendy M. Margolis and Cosgrave, Vergeer & Kester, L.L.P.

EDMONDS, J.

Armstrong J., concurring in part and dissenting in part.

## EDMONDS, J.

Plaintiff, a minority director/shareholder in defendant corporation, sued the corporation, the corporation's majority directors/shareholders Harding and Alexander-Hergert and the corporation's attorneys for breach of fiduciary duties. Plaintiff appeals from an order dismissing his complaint against defendant attorneys for failure to state ultimate facts sufficient to constitute a claim.[1] ORCP 21 A(8). We affirm.

■ Because this case comes to us on appeal from a judgment of dismissal pursuant to ORCP 21 A(8), we accept all well-pleaded allegations of the complaint as true and give plaintiff the benefit of all favorable inferences that could be drawn from the facts alleged. *Stringer v. Car Data Systems, Inc.*, 314 Or 576, 584, 841 P2d 1183 (1992). Plaintiff's complaint, insofar as the issues on appeal are concerned, is labeled "Breach of Fiduciary Duties." It alleges that plaintiff, along with Harding and Alexander-Hergert, each owned one-third of the shares of stock in the corporation. Each shareholder held one of the three positions on the board of directors, each served as a corporate officer, and each was an employee of the corporation.

On May 5, 1993, Harding and Alexander-Hergert informed plaintiff that he had been removed from the board of directors and relieved of his duties as secretary of the corporation. Also, the corporation terminated his employment. Plaintiff objected to these actions on the grounds that he had not received notice of any shareholders' or directors' meetings and that his position as director was protected by the cumulative voting requirements of the corporation's bylaws. Harding and Alexander-Hergert then employed defendant attorneys to represent the corporation in the dispute with plaintiff. According to the complaint, defendant attorneys sent letters to plaintiff containing false statements of fact about his termination as a member of the board of directors and as an officer and "assisted" and furnished "legal advice" to Harding and Alexander-Hergert in their efforts to remove

---

[1] All claims against Harding and Alexander-Hergert and the corporation have been dismissed, and they are not parties to this appeal.

plaintiff from his corporate positions by amending the corporate bylaws to remove the cumulative voting provision, removing plaintiff as a director, and issuing shares of treasury stock to the majority shareholders. That issuance reduced plaintiff's interest in the corporation from one-third to under ten percent. In sum, plaintiff alleges that Harding and Alexander-Hergert's actions effectively "squeezed" him out of the corporation.

Plaintiff's arguments on appeal contain components that raise three possible theories of liability: (1) that defendant-attorneys, as corporate counsel, are "directly" liable to plaintiff for breach of their own fiduciary duties to him as a director; (2) that they "conspired" with Harding and Alexander-Hergert to breach fiduciary duties that Harding and Alexander-Hergert owed to plaintiff as a minority shareholder; and (3) that defendant attorneys knowingly aided and abetted Harding and Alexander-Hergert in the breaches of their fiduciary duties to plaintiff. We address each theory separately in light of the allegations in the complaint to determine if it constitutes a legally cognizable claim.

■ Plaintiff's theory of direct liability is dependent on the existence of a fiduciary duty between defendant attorneys and plaintiff. Shareholders of a corporation who act as directors or officers wear more than one hat. They are representatives of the corporation in addition to their personal ownership interest. The Supreme Court held in *In re Banks*, 283 Or 459, 469, 584 P2d 284 (1978), that, generally, an attorney hired by a corporation to furnish services to the corporation owes a duty of loyalty to the corporation and not to its officers, directors and shareholders in their personal capacity.[2] In this case, plaintiff, a minority shareholder, does not allege that defendant attorneys were hired to represent

---

[2] In *In re Kinsey*, 294 Or 544, 562 n 10, 660 P2d 660 (1983), the Supreme Court said:

"The appropriate rule for a corporation with minority stockholders with substantial interests * * * is:

" 'As a corporation speaks and acts only through its officers and directors, its counsel is their legal advisor in respect to its affairs, but in performing that duty he is acting as the corporation's attorney only and not as the attorney of any of its stockholders, directors, or officers as individuals, or any group or faction thereof.' " (Quoting ABA Opinion 86 (1932).)

him regarding his personal interests. Rather, he alleges that they were "employed * * * to provide legal services to [the corporation.]" Consequently, in the absence of an attorney-client relationship, there is no fiduciary duty owed to plaintiff in his personal capacity as a shareholder by defendant attorneys that could give rise to an action for breach of a fiduciary duty.

The remaining theories present the issue of whether defendant attorneys can be held liable for the tort of breach of a fiduciary duty for their role in rendering legal advice and assistance to the other defendants even though defendant attorneys owed no personal fiduciary duty to plaintiff. According to the allegations in the complaint, defendant attorneys had no direct contact with plaintiff except to write the letters informing him of his status as a director and officer. Although plaintiff alleges that they intended that he rely on the information in the letters, there is no allegation that he did so. In fact, he alleges that he subsequently objected to the efforts of Harding and Alexander-Hergert to remove him, and he does not allege that he was defrauded by defendant attorneys. Thus, the gravamen of plaintiff's complaint for breach of a fiduciary duty against defendant attorneys is that they gave legal advice and assistance to Harding and Alexander-Hergert after their initial action to remove plaintiff from the corporation, and it is those specific allegations that frame our holdings in this opinion.[3]

■ In general, a lawyer can be held liable for acting in concert with a client to commit a tort, even though the lawyer does not commit the tort personally. For instance, in *Clausen v. Carstens*, 83 Or App 112, 730 P2d 604 (1986), we held that a complaint stated a claim for trespass against lawyers who had represented their client in a dissolution of marriage proceeding and had acted with their client to cause a receiver to take legal custody of the plaintiffs' businesses. We said,

---

[3] The dissent would approach the issues involving an alleged conspiracy more broadly. We disagree with that generic view. This case involves the potential liability in tort of those who are alleged to have done nothing more than to have furnished legal services to their clients that resulted in the breach of a fiduciary duty that their clients owed to another. We believe that those facts require a careful analysis that is confined to the specific facts pled and the particular tort theory on which plaintiff relies.

"[d]efendants need not have trespassed personally if they caused the receiver to do so." 83 Or App at 115.

■ Another general rule is that tort liability is predicated on the breach of a duty owed to the plaintiff that the law implies, and in the absence of such a duty there can be no liability. *Zumwalt v. Lindland*, 239 Or 26, 396 P2d 205 (1964). The application of that rule is expressed in our holding in *Clausen*. Every person has a legal duty not to trespass on the property of another, just as everyone has a duty not to subject others to a reasonably foreseeable risk of harm. When the defendant attorneys in *Clausen* acted in concert with their client to cause a trespass, joint liability for the trespass ensued.

■ This case differs from cases like *Clausen* because of the nature of plaintiff's tort theory. The breach of a fiduciary duty is based on the breach of a duty that the law implies from a fiduciary relationship. *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, n 7, 831 P2d 7 (1991). In this case, a fiduciary relationship does not exist between plaintiff and defendant attorneys. To reiterate: the issue then is whether defendant attorneys could be held liable on the facts alleged in the complaint under a form of joint liability (conspiracy or aiding and abetting) for a tort that they otherwise could not commit against plaintiff.[4]

■ Under Oregon law, a civil conspiracy is not an independent tort. Rather, it is a theory of mutual agency under which the acts of each of the conspirators are imputed to the other members for purposes of tort liability. The joint liability that arises from the acts of others is predicated on an agreement or meeting of the minds to accomplish an unlawful purpose, or a purpose not in itself unlawful by unlawful means, that results in an injury to another. *Bonds v. Landers*, 279 Or 169, 174-75, 566 P2d 513 (1977). Thus, in the absence of a statutory violation, a conspiracy is not tortious unless the

---

[4] It is critical to an analysis of joint liability for torts that the focus initially center on the requirements of the elements of the underlying tort. For instance, if an attorney acted in concert with a client to misrepresent a material fact or to commit fraud, liability could arise because the law implies and the elements of the tort encompass the duty of all persons not to act fraudulently in their dealings with others.

underlying act itself is tortious. *See Bliss v. Southern Pacific Co. et al*, 212 Or 634, 642, 321 P2d 324 (1958) (holding that an alleged conspiracy to bring about a termination of a lease was not tortious when an alleged co-conspirator could terminate the lease as a matter of contract right). Thus, any discussion about conspiracy must engage with the elements of the underlying tort.

■ When the theory of civil conspiracy is superimposed over the tort of breach of a fiduciary duty, the law imputes the acts performed by each conspirator pursuant to their agreement to the other conspirators. Here, the complaint alleges facts from which it can be inferred that Harding and Alexander-Hergert breached their fiduciary duties to plaintiff. The theory of conspiracy serves to impute their actions to defendant attorneys. However, when that occurs, it is of no legal import insofar as defendant attorneys are concerned because they owed no fiduciary duty to plaintiff. Our prior case law illustrates the principle.

In *Bergman v. Holden*, 122 Or App 257, 857 P2d 217 (1993), the issue was whether the defendant could be held liable for logs obtained as a result of a trespass on the plaintiff's property by another. The evidence was that the defendant knew that some of the logs that he hauled from a landing adjacent to the plaintiff's property belonged to the plaintiff but that he did not know that the logs had been procured through a trespass. We held that the evidence was insufficient to make the defendant jointly liable along with the trespasser for the tort of trespass because he had not violated any duty owed to the plaintiff. In other words, the acts of the trespasser could not be imputed to the defendant because the defendant had not violated an independent duty owed to the plaintiff not to trespass on his property.

In arriving at our holding in *Bergman*, we relied in part on *Restatement (Second) of Torts* § 876(a). We said:

> "That section requires evidence that defendant committed a tortious act in concert with the other defendants or pursuant to a common design with them. It requires that the acts committed by both defendant and by the other defendants be independently tortious in character." 122 Or App at 260.

*Restatement (Second) of Torts* § 876(a) (1977), provides:

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

"(a) does a tortious act in concert with the other or pursuant to a common design with him * * *."

Comment c states:

"In order for the rules stated in Clause (a) to be applicable, it is essential that the conduct of the actor *be in itself tortious*. One who innocently, rightfully and carefully does an act that has the effect of furthering the tortious conduct or cooperating in the tortious design of another is not for that reason subject to liability."[5] (Emphasis supplied.)

■ Our holding in this case is consistent with the *Restatement*. Under section 876(a), defendant attorneys' conduct could not be tortious as to plaintiff because they owed no "fiduciary duty" to plaintiff. In contrast, had defendant-attorneys jointly participated in a fraud with their clients, liability would occur because their conduct would be in itself tortious. Under those circumstances, the acts of the conspirators could be imputed to each other. Thus, because the tort of breach of a fiduciary duty depends on a duty that the law implies from a fiduciary relationship between the parties, it necessarily follows that a fiduciary relationship must exist between the plaintiff and all joint tortfeasors. In this case, plaintiff does not allege facts that demonstrate a fiduciary relationship between him and defendant attorneys. Therefore, they cannot be held liable for Harding's and Alexander-Hergert's breach.

The dissent relies on language in *Still v. Benton*, 251 Or 463, 445 P2d 492 (1968), and *Crosby v. SAIF*, 73 Or App 372, 699 P2d 198 (1985), for the proposition that defendant attorneys can be held liable for conspiring with others to breach the others' fiduciary duties. We do not understand

---

[5] *See also Restatement (Second) of Torts* § 876(a), illustration 1:

"A, B, C, and D come together to E's house at night to rob. A breaks E's front door, B ties E up, C beats E and D steals and carries away E's jewelry. A, B, C and D are all subject to liability to E for all damages caused by the trespass to land, the false imprisonment, the battery and the conversion."

those cases to hold as the dissent suggests. We read *Still* to state the general proposition that when a plaintiff alleges and proves that several defendants conspired to commit a tort, all conspirators can be held liable for the tort even though they did not individually commit all of the elements of the tort. In the event that a conspiracy cannot be demonstrated, only those defendants who have personally committed tortious acts against the plaintiff are liable. However, the court in *Still* was not faced with the issue before us. In *Still*, the court held that the plaintiff had not proven a conspiracy, and therefore, the alleged conspirators could be held liable only for their individual torts. This case presents the different issue of whether an alleged conspirator can be held liable on a theory of conspiracy when it is legally impossible for that conspirator to commit the tort personally, and no other tort on the part of the conspirator has been alleged.

The dissent misunderstands our position regarding the meaning of *Crosby*. *See* 150 Or App at 56 n 4. In that case, the plaintiff alleged that an employer and its workers' compensation insurer, SAIF, had conspired wrongfully to terminate benefits to which the plaintiff was rightfully entitled from SAIF. According to the complaint, the conspirators conspired to create a light-duty job for the plaintiff to effect the termination of his benefits with the understanding that the employer would discharge him after he had recommenced employment. SAIF argued first that it had discretionary immunity under ORS 30.265(3)(c). The dissent's quote, 150 Or App at 55, about the relevance of the employer's hiring and firing authority is in the context of that issue. In context, the statement means that the employer's discretion is irrelevant to any exercise of discretion that would make SAIF immune under the statute. Of course, that issue is not part of this case.

The dissent blends in another argument made by SAIF in *Crosby* with the above quotation to arrive at the conclusion that "it is clear that, in Oregon, a person can be held liable for civil conspiracy even if the person does not commit an independently tortious act." 150 Or App at 55-56. In *Crosby*, SAIF argued that the plaintiff's complaint did not allege any violation of a statutory or common-law duty that made the plaintiff's discharge unlawful. In response, we said,

"We do not share SAIF's understanding that a conspiracy, the overt acts of which *have* produced damage, is not actionable." 73 Or App at 377. (Emphasis in the original.) The fact that SAIF could point to the employer's act of discharging the plaintiff does not change the fact that SAIF was obligated to pay benefits as long as they were lawfully owed. The "tort-like" act of wrongfully terminating benefits was a breach of SAIF's duty under the law that was independently tortious of the conspiracy, even if in furtherance of it.[6] It is unremarkable that SAIF could be held liable for damages flowing from the breach of the duty that it owed to the plaintiff. In contrast, defendant attorneys in this case had no obligation to plaintiff. Contrary to the dissent's position, there is nothing in our holding in *Crosby* that is inconsistent with our holding today.

In summary, we have considered plaintiff's and the dissent's arguments regarding whether defendant attorneys could be held liable for the breach of a fiduciary duty owed by the other defendants under the theory of conspiracy based on the rendering of legal assistance as alleged in this case. We believe that the better-reasoned approach is not to create a common law tort theory of conspiracy to breach a fiduciary duty under these facts. Our holding is consistent with the policy underlying our holding in *Bergman* that tort liability is predicated on the breach of duties owed to another. The tort of the breach of a fiduciary duty contemplates a duty arising from a relationship of attorney and client between plaintiff and defendant attorneys that did not exist in this case, and we decline to impose the consequences of such a relationship on these facts.

The third theory on which plaintiff and the dissent rely can be characterized as the "aid and assist" theory. The complaint alleges that defendant attorneys "knowingly assisted" Harding and Alexander-Hergert in their breach of

---

[6] What is crucial to understanding the holding in *Crosby* is the recognition that the plaintiff alleged that SAIF had independently violated a duty owed to the plaintiff as well as having participated in a conspiracy with the employer. We said, "Plaintiff does not plead that he was terminated because he filed a claim; he alleges that defendants conspired to divest him unlawfully of his right to workers' compensation benefits and to terminate him." 73 Or App at 374-75.

their duties owed to plaintiff. Under Oregon law, it is generally held that

> " 'all who aid, command, advise, or countenance the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner *as they would be if they had done the same tort with their own hands.*' " *Perkins v. McCullough*, 36 Or 146, 149, 59 P 182 (1899) (quoting from *Judson v. Cook*, 11 Barbour 642 (N.Y. 1852)). (Emphasis supplied.)

*Restatement (Second) of Torts* § 876(b) (1977), also reflects the general rule:

> "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:
>
> "* * * * *
>
> "(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]"

Section 876(b) has been adopted in substance by the Supreme Court in *Sprinkle v. Lemley*, 243 Or 521, 414 P2d 797 (1966), and by this court in *Solberg v. Johnson*, 90 Or App 90, 93, 750 P2d 1190, *rev'd in part on other grounds* 306 Or 484, 760 P2d 867 (1988), in the context of common-law negligence actions. That adoption is consistent with the general principle that every person owes a duty not to injure another negligently and, thus, that by aiding and assisting another in a breach of such a duty, the actor violates his or her own duty of care. In this case, no fiduciary relationship existed between plaintiff and defendant attorneys. Arguably, in the language of the *Perkins* court, defendant attorneys could not be held liable for aiding and abetting Harding and Alexander-Hergert because they could not commit "the same tort with their own hands."

The parties have not cited any Oregon case to us, nor are we aware of any Oregon case, that has applied the general rule of liability for aiding and assisting another in the commission of a tort to the tort of the breach of a duty imposed by a fiduciary relationship. In jurisdictions outside the State of Oregon, the courts are split as to whether to recognize such a claim.[7] Those courts that have considered the

---

[7] An insightful discussion and helpful compilation of case law regarding the issue is found in Comment, *Changing the Nature of Corporate Representation:*

precise question have permitted a cause of action only when the plaintiff alleges that there is: "(1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach and (3) damages." *Future Group, II v. Nations Bank*, 478 SE2d 45 (SC 1996).

For instance, in *Holmes v. Young*, 885 P2d 305 (Colo App 1994), limited partners alleged that a general partner breached its fiduciary duties owed to them and that the partnership's attorney aided and abetted that breach. The court relied on *Restatement (Second) of Torts* § 874,[8] comment *c*, which states:

> "A person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused. (See § 876.) The measure of his liability, however, may be different from that of the fiduciary since he is responsible only for harm caused or profits that he himself has made from the transaction, and he is not necessarily liable for the profits that the fiduciary has made nor for those that he should have made."

However, it held that the defendant attorney was not liable because he did not have the requisite *knowledge* to commit the tort. Other courts have focused on the "substantial assistance" element of section 876(b). *See Blow v. Shaughnessy*, 364 SE2d 444 (NC App 1988). *See also Samuel M. Fienberg Testamentary Trust v. Carter*, 652 F Supp 1066, 1082 (SDNY 1987); *Holmes v. Young*, 885 P2d 305, 308 (Colo App 1994).[9]

In contrast, some states do not recognize tort liability for aiding and assisting another in the commission of a tort or follow § 876(b). *See, e.g., FDIC v. S. Prawner & Co.*, 829 F Supp 453, 457 (D Me 1993) (in Maine, "[i]t is clear

---

*Attorney Liability for Aiding and Abetting the Breach of Fiduciary Duty*, 28 St. Mary's LJ 213 (1996).

[8] *Restatement (Second) of Torts* § 874 (1977), provides:

"One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of a duty imposed by the relation."

[9] The federal courts consider whether "substantial assistance" has been rendered to be an issue of causation. They consider such factors as the nature of the act encouraged, the amount of and kind of assistance, the defendant's absence or presence at the time of the tort and the relationship, if any, to the primary tortfeasor. *See e.g., Halberstam v. Welch*, 705 F2d 472, 483-83 (DC Cir 1983).

* * * that aiding and abetting liability did not exist under the common law, but was entirely a creature of statute"); *In re Asbestos School Litigation*, 1991 US Dist Lexis 10471, *34 (ED Pa 1991) (cause of action under *Restatement* § 876 "has not yet been applied as a basis for liability" by Pennsylvania courts); *Meadow Limited Partnership v. Heritage Savings and Loan Ass'n.*, 639 F Supp 643, 653 (ED Va 1986) (aiding and assisting tort based on *Restatement* § 876 "not expressly recognized by the state courts of the Commonwealth" of Virginia).

Again, under plaintiff's "aid and assist" theory, we are asked to create a tort theory that has not previously existed in the law of the tort of breach of fiduciary duty in Oregon. We recognize that there are competing policy arguments about whether such a theory should exist on these facts. On the one hand, a guiding principle of tort law is to compensate the injured. The giving of assistance and advice to a putative tortfeasor to enable him or her to engage in tortious conduct is contrary to societal mores and that policy. Additionally, proponents for the imposition of liability under these circumstances point out that it serves societal interests for plaintiffs to be able to recover their losses from financially responsible defendants, who are required to procure professional malpractice insurance. Attorneys, the dissent properly argues, should not be immune and should stand on equal footing with everyone else when it comes to liability for aiding and assisting tortious conduct.

On the other hand, it could be argued that to impose liability on attorneys for giving legal advice and acting on behalf of clients in the context of the facts of this case will undermine the attorney-client relationship as well as other professional relationships where highly specialized advice or services are rendered. Inevitably, the advice and assistance rendered to a client as part of such relationships will, for purposes of litigation, constitute "substantial assistance," thereby creating an issue of fact for the jury. The giving of professional advice will be "chilled" by the knowledge that liability could result to those outside the professional relationship. The litigation of the "knowledge" element of section 876(b) may require clients and their attorneys to disclose confidential communications in defense of claims made against

them. Also, the adoption of the dissent's proposed rule will require that the attorney anticipate client response to his advice and monitor the client's subsequent actions in order to avoid personal liability. The potential for conflicts between attorney and client regarding issues of confidentiality and client independence would be dramatically enhanced, and the ability of clients to receive legal services would be seriously impeded, as a result of the proposed rule. Ultimately, application of section 876(b) to this case could infringe on the authority of clients to determine the extent and goals of the attorney-client relationship and have the effect of making the attorney a "participant" in the business of the client rather than an advocate and an advisor.[10]

■ Although the above policy concerns are part of the equation, they are, in our opinion, by no means controlling. The holding in this case will have implications for anyone who assists in conduct that breaches a fiduciary duty owed by another. Because of the competing interests involved and the importance of this issue to all individuals who may be involved with fiduciaries, we believe that whether liability for aiding and assisting a fiduciary in the breach of a fiduciary relationship in the absence of a personal duty must necessarily be decided on a case-by-case basis. We therefore reject the dissent's proposition that Oregon law imposes a generic duty in this context. Rather, we will look to the particular facts alleged to determine if such a duty exists.

In this case, we are mindful that the corporation retained defendant attorneys *after* Harding and Alexander-Hergert, on their own initiative, had already fired plaintiff and removed him from the board of directors and that the assistance that plaintiff alleges that defendant attorneys provided to the corporation consisted of giving legal advice and, possibly, the preparation of documents. It is also important to our analysis that there are no allegations that defendant attorneys acted in a direct, tortious manner. Rather, their

---

[10] The dissent points to the security laws (*e.g.*, ORS 59.115(3)), in which the same concerns exist. It should be pointed out that the legislature has traditionally closely regulated the sale of securities for the protection of the public. In contrast, the tort of Breach of a Fiduciary Duty is a child of the common law, and there appears to be no similar compelling need to extend its reach to the facts alleged here.

actions were directed to their client, the corporation, and the alleged indirect result of their conduct was the further breach of the fiduciary duty owed to plaintiff by Harding and Alexander-Hergert. In that light, we determine as a matter of law whether their conduct was tortious by reference to the intrinsic nature of the tort of breach of a fiduciary relationship and its purpose.

The tort seeks to protect fiduciary relationships and to promote the worthy goal that fiduciary duties be kept and performed. That policy is not furthered by extending it to those who do not owe such a duty in the context of what is alleged here. The obligation to act as a fiduciary and the liability for the breach of such a duty flow out of a fiduciary relationship. Adoption of plaintiff's proposal under these circumstances would require that we imply a fiduciary relationship between plaintiff and defendant attorneys that would be the antithesis of the attorney-client relationship between defendant attorneys and their own client, the corporation. It is uncontrovertible that defendant attorneys could not have ethically represented plaintiff, a potential adversary in the conflict. Thus, it seems incongruous to hold defendant attorneys jointly liable for the breach of a fiduciary duty that would be unethical for them to perform.

Moreover, our reluctance to employ section 876(b) in a wholesale fashion as the expression of a common-law duty in Oregon has precedence. *See e.g.*, *Schram v. Albertson's Inc.*, 146 Or App 415, 934 P2d 483 (1997) (holding that a claim for common-law wrongful discharge from employment does not lie against a fellow employee because the policy of the law is to hold employers accountable). Also, holding that defendant attorneys are not liable for aiding and assisting the breach of a fiduciary duty owed by another under the facts of this case will not always result in the lack of a remedy for an injured party. Some duties implicating liability for aiding and abetting are imposed by statute,[11] and others arise out of applicable rules of ethics or professional rules of responsibility. In addition, the established common-law rules

---

[11] For instance, individuals can be held liable under ORS 59.135 for aiding and abetting fraud and deceit with respect to the offer or sale of securities.

afford remedies for fraud, abuse of process, conversion, trespass, or the direct participation with the fiduciary of a trust in the breach of trust duties. *See Restatement (Second) of Trusts*, § 326 (1977). In that light, the case for creating additional tort liability in Oregon for aiding and assisting the breach of a fiduciary duty by an attorney under these facts is not compelling.

We conclude, for the reasons expressed, that the law does not impose liability under the facts alleged in plaintiff's complaint for aiding and assisting other tortfeasors, nor does liability lie under a theory of conspiracy. Accordingly, the trial court did not err in granting defendant attorneys' Rule 21 motion.

Affirmed.

**ARMSTRONG, J.,** concurring in part and dissenting in part.

The majority holds that plaintiff failed to state any cognizable claim against defendant attorneys. Because plaintiff did allege facts that state claims against defendants under theories of civil conspiracy and aiding-and-abetting, I respectfully dissent.

According to plaintiff's complaint, plaintiff, Harding and Alexander-Hergert were the officers, directors and shareholders of Founders Funding Group, Inc. (FFG). Plaintiff owned one-third of the outstanding shares of FFG and Harding and Alexander-Hergert owned the remaining two-thirds. Because Harding and Alexander-Hergert were majority shareholders and directors of FFG, they owed a fiduciary duty to plaintiff as an FFG shareholder. Plaintiff alleges that Harding and Alexander-Hergert entered into an agreement to "squeeze" him out of the company and, in order to achieve that goal, took actions that breached their fiduciary duties to him. After plaintiff objected to their first attempt to exclude him from the company, Harding and Alexander-Hergert turned to defendants for assistance. Defendants knew that Harding and Alexander-Hergert were breaching their fiduciary duties to plaintiff, but, despite that knowledge, they "entered into an agreement" with Harding and Alexander-Hergert "to take such further action or actions as [might] be

necessary" to exclude plaintiff from FFG. First, defendants attempted to enforce Harding and Alexander-Hergert's earlier tortious action. Once they realized that that action was "invalid and ineffective," they provided Harding and Alexander-Hergert with the legal advice necessary to remove plaintiff as a director and corporate secretary and wrongfully to dilute his interest in the company from 33 percent to 9.09 percent of the outstanding shares.

Plaintiff's complaint alleged claims against Harding and Alexander-Hergert for breach of their fiduciary duties as majority shareholders and directors. It also alleged that defendants joined Harding and Alexander-Hergert's conspiracy to exclude plaintiff from FFG, even though they knew that Harding and Alexander-Hergert would have to breach their fiduciary duties to achieve that goal. It alleged that defendants "provided substantial assistance" to Harding and Alexander-Hergert in that effort. Finally, it alleged that plaintiff suffered damages as a result of Harding's, Alexander-Hergert's and defendants' actions.

Under Oregon law, the elements of a civil conspiracy are:

> "(1) Two or more persons * * * ; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."

*Bonds v. Landers*, 279 Or 169, 174, 566 P2d 513 (1977) (citations omitted). Plaintiff alleges facts that satisfy each of those elements: He alleges that defendants agreed with Harding and Alexander-Hergert to work together to "squeeze" plaintiff out of the corporation through breach by Harding and Alexander-Hergert of their fiduciary duties to plaintiff. He alleges that he was damaged as a result of that breach. Therefore, he states a claim for civil conspiracy.

Despite all that, the majority concludes that defendants cannot be liable to plaintiff for civil conspiracy because civil conspiracy is not an independent tort but, rather, a theory of mutual agency. According to the majority, that means that, under a civil conspiracy theory, "the acts of each of the conspirators are imputed to the other members" of the

conspiracy. 150 Or App at 39. As a result, because defendants did not have a fiduciary relationship with plaintiff, even if the actions of Harding and Alexander-Hergert were imputed to them, they still would not have committed any tort, because they would not have violated any duty that *they* owed to plaintiff. 150 Or App at 41.

The majority's understanding of civil conspiracy improperly limits the liability of conspirators to those who are legally able to commit the tortious acts that cause injury. When Oregon courts have stated or implied that civil conspiracy is not an "independent tort," they have been making one of two related points: (1) for a civil conspiracy claim to be actionable, there must be an underlying unlawful or tortious act that is either the purpose of the conspiracy or a means to achieve that purpose;[1] (2) even if a plaintiff cannot prove a conspiracy, the plaintiff still may recover against each defendant who independently committed a tort against the plaintiff.[2] They were not holding, as the majority does, that only those who were legally able to commit the underlying tortious acts could be held liable for those acts under a civil conspiracy theory.

Under Oregon law, civil conspiracy *is* a theory of mutual agency, under which each conspirator is liable for tortious acts committed by co-conspirators acting to further the conspiracy. Thus, while "[t]he damage in a civil conspiracy flows from the overt acts and not from the conspiracy," *Bonds*, 279 Or at 175, the liability for that damage extends to all who join the conspiracy. Civil conspiracy does not merely allow *possible* tortfeasors to be held liable for a co-conspirator's tort; it makes joint tortfeasors of those who conspire to commit the tort. That is the purpose of the action:

> "When a plaintiff alleges and proves that several defendants conspired to commit a tort upon him, *all the defendants involved in the conspiracy can be held liable for the*

---

[1] *See, e.g., Bonds*, 279 Or at 175; *Bliss v. Southern Pacific Co. et al*, 212 Or 634, 642, 321 P2d 324 (1958).

[2] *See, e.g., Still v. Benton*, 251 Or 463, 466, 445 P2d 492 (1968); *Security & Inv. Co. v. Locks Towing Co.*, 213 Or 503, 512, 326 P2d 439 (1958); *Keller v. Commercial Credit Co.*, 149 Or 372, 375-76, 40 P2d 1018 (1935); *Gabriel v. Collier*, 146 Or 247, 255, 29 P2d 1025 (1934).

*overt act which is committed by one of the defendants pursuant to the conspiracy."*

*Still v. Benton,* 251 Or 463, 466, 445 P2d 492 (1968) (emphasis supplied). The conspirators can be held liable whether or not they were legally able to commit the underlying tortious act.

There simply is no support in Oregon law for the majority's contrary position that the defendant must be legally capable of committing the underlying tort to be liable for civil conspiracy. An example illustrates how the majority's distinction can lead to untenable results. A, B, C and D are the shareholders and directors of ABCD, Inc., and A, B and C each have a fiduciary duty to D. E, D's neighbor, dislikes D intensely, so she approaches A and B to see if she can convince them to join her in a plot to make D's life miserable. They enter an agreement to achieve that goal. They decide to "squeeze" D out of the corporation. The best way to do that is for A and B to breach their fiduciary duties to D. A, B and E approach C about the project. She joins the conspiracy but refuses to take any overt action or breach her fiduciary duty to D. A and B subsequently breach their respective duties, but D claims that their efforts are ineffective and continues to involve herself in the company. A and B then turn to F, a computer-programming consultant to ABCD, Inc. They tell him what they have been trying to accomplish, that they know that they are breaching their respective fiduciary duties to D to achieve it, but state that they do not care. F agrees to join the conspiracy. Knowing that it will help A and B breach their duties, F toils for days to create a computer program to be used in that effort, which coincidently will also help ABCD, Inc., act more efficiently. A and B use the program, further breaching their duties, and finally are able to exclude D from the corporation. D suffers damages.

D then files a complaint against A and B for breach of fiduciary duty and against A, B, C, E and F under a civil conspiracy theory. According to the majority, despite the fact that A, B, C, E and F were all involved in the conspiracy to "squeeze" D out of the corporation, and despite the fact that tortious actions were taken to further the conspiracy, only A,

B and C can be held liable for the conspiracy. Although E conceived of the entire plot and F made its effective execution possible, they both are free from liability. That outcome is illogical and unjust and has no basis in Oregon law.

The majority supports its decision by mischaracterizing our reasoning in *Bergman v. Holden*, 122 Or App 257, 857 P2d 217, *rev den* 318 Or 170 (1993). In that opinion we reconsidered our earlier decision in *Bergman v. Holden*, 118 Or App 530, 848 P2d 141 (1993), and adhered to it as modified. In *Bergman*, the defendant appealed a judgment for timber trespass. He had been hired to haul timber from a location adjacent to the plaintiff's property. Other people had trespassed on plaintiff's property, severed the timber and moved it to the location from which the defendant picked it up. The plaintiff brought an action against the defendant under ORS 105.810 and ORS 105.815, the timber trespass statutes. She argued that even if the defendant had not entered her property, he could be liable for the trespass under *Restatement (Second) of Torts* § 876. We rejected plaintiff's argument:

> "Assuming, but not deciding, that the *Restatement* tests apply in Oregon, there is no evidence to support liability.
>
> "Liability under section 876(a) requires evidence that defendant acted in concert or pursuant to a common design with the other defendants. Plaintiff points to no evidence of any conduct in concert with the other defendants or of any common design, and we find none."

*Bergman*, 118 Or App at 534.

The plaintiff filed a reconsideration motion that we allowed. In that motion, she argued that there was evidence that the defendant knew that at least some of the timber that he transported had come from the plaintiff's land. *Bergman*, 122 Or App at 259. On reconsideration, we noted that there still was no evidence that the defendant was aware that the timber had been removed illegally and no evidence that he had acted in concert with the others to commit a trespass. We then stated that, under *Restatement* section 876(a), a conspirator had to commit an act "independently tortious in character" in order for that conspirator to be liable for damages

caused by the acts of co-conspirators. *Id.* at 260. We adhered to our decision as modified.

*Bergman* can be interpreted in only two possible ways, neither of which is relevant to this case. First, it can be read to hold that there was no liability under section 876(a) because there was no evidence that the defendant had acted in concert with the people who had committed the trespass. That conclusion is irrelevant to our case because plaintiff here has alleged that defendants *did* act in concert with Harding and Alexander-Hergert.

Second, *Bergman* can be read to hold that there was no liability under section 876(a) because there was no evidence that the defendant had engaged in any independently tortious acts against the plaintiff. Even if that is a proper interpretation of section 876(a), a proposition that I question, we have never determined that that section correctly states Oregon law. Except as specifically adopted, the *Restatement (Second) of Torts* is not law in Oregon.[3] It is useful only to the extent that it accurately restates Oregon law. Occasionally, when that occurs, Oregon courts have spoken of "adopting" a *Restatement* provision. In *Bergman,* plaintiff's entire argument was premised on section 876. We *assumed* for the sake of considering her argument that section 876 correctly stated Oregon law on the subject, but we expressly did *not* decide that issue. Because the interpretation of that provision in *Bergman* does not accurately state Oregon law on civil conspiracy, it would not be appropriate to "adopt" that provision to dispose of plaintiff's claims today.

In fact, as noted earlier, the proposition that a person can be held liable for civil conspiracy only if he or she independently commits a tortious act has been squarely rejected in Oregon. *See Still*, 251 Or at 466 (mayor and councilman allegedly conspired to coerce city manager into discharging sheriff; only mayor acted to secure the discharge; held that, if conspiracy proven, both conspirators could be held liable for damages resulting from the underlying acts by

---

[3] *See, e.g.,* ORS 30.920 (essentially adopts *Restatement (Second) of Torts* § 402A and specified comments as Oregon law).

mayor); *Crosby v. SAIF*, 73 Or App 372, 376-77, 699 P2d 198 (1985).

In *Crosby*, the plaintiff was injured on the job and, as a result, was entitled to workers' compensation benefits from SAIF. The plaintiff alleged that SAIF and plaintiff's employer had "conspired to divest him unlawfully of his right to workers' compensation benefits and to terminate him." *Id.* at 375. SAIF argued that it could not be held liable under a civil conspiracy theory because, other than the allegation that it had joined the conspiracy, it had not committed any tortious acts. It noted that it was the plaintiff's employer that made "hiring and firing decisions" and that the plaintiff had not alleged any facts that indicated that SAIF "did have or even could have affectuated plaintiff's termination." *Id.* at 376. SAIF stated that

> " 'civil conspiracy is not itself an independent tort, and plaintiff has not pled the violation of any statute by SAIF Corporation or the violation by SAIF Corporation of any common-law duty owed to plaintiff. Plaintiff's complaint * * * does not state how plaintiff's discharge was in any way unlawful. Moreover, any alleged agreement between SAIF Corporation and plaintiff's employer to create a "light duty" position for plaintiff is completely authorized by statute and regulation and is eminently proper.' "

*Id.* In essence, SAIF's argument was that it could not be held liable under a civil conspiracy theory because it took no tortious action itself and it was incapable of committing the alleged acts that had led to plaintiff's injury.

We rejected SAIF's argument. We concluded that "[t]he fact that [the employer] had the hiring and firing authority is irrelevant to whether SAIF conspired with [the employer] to exercise that power for an unlawful purpose." *Id.* The plaintiff had alleged that SAIF and the employer had joined together for an unlawful purpose, that one of the conspirators had engaged in tortious conduct to further that purpose, and that the plaintiff had suffered damages as a result. We concluded that the alleged conspiracy, "the overt acts of which *have* produced damage," was actionable. *Id.* at 377

(emphasis in original). Thus, it is clear that, in Oregon, a person can be held liable for civil conspiracy even if the person does not commit an independently tortious act.[4]

In conclusion, applying the proper standard, plaintiff alleged facts sufficient to state a claim for civil conspiracy. There is no requirement in Oregon law that defendants must be legally capable of committing the underlying tortious acts or that they must do anything other than join the conspiracy. Therefore, if plaintiff alleges and proves that defendants joined a conspiracy to "squeeze" him out of the corporation improperly, defendants can be held liable for that tort, even though Harding and Alexander-Hergert are the ones who committed the relevant tortious acts by breaching their fiduciary duties to plaintiff. The majority errs in concluding otherwise.

The majority also errs in concluding that plaintiff failed to state a claim against defendants for aiding and abetting Harding and Alexander-Hergert's breach of their fiduciary duties. Under Oregon law,

> " 'all who aid, command, advise, or countenance the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner *as they would be if they had done the same tort with their own hands.*' "

*Perkins v. McCullough*, 36 Or 146, 149, 59 P 182 (1899) (emphasis supplied; citation omitted). If a person aids and abets the commission of a tort, it is as if the person committed the tort. There is no requirement that the defendant be legally capable of committing the tort.

---

[4] The majority disputes that *Crosby* has any bearing on this case. The majority is mistaken. Only the employer could act to harm the plaintiff in *Crosby*, because only the employer had the ability to create a light-duty position for the plaintiff and to fire him, which were the acts that had caused the plaintiff's harm. Nevertheless, we held that SAIF could be liable as a co-conspirator for the employer's acts. Here, only Harding and Alexander-Hegert could cause plaintiff's harm, because only they could breach their fiduciary duty to him. *Crosby* establishes that that fact does not insulate defendants from conspiracy liability to plaintiff. Hence, *Crosby* directly refutes the majority's position that a co-conspirator must be able to commit the underlying tortious acts in order to be liable as a co-conspirator for the harm caused by those acts.

The majority correctly notes that Oregon courts have held that *Restatement (Second) of Torts* § 876(b) accurately states Oregon law. 150 Or App at 44. That section provides that,

"[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:

"\* \* \* \* \*

"(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."

*Restatement (Second) of Torts* § 876(b). While the proper analysis no longer depends on the existence of a specific duty toward the injured party, *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987), the principle articulated in *Perkins* and restated by section 876(b) remains: A person is subject to liability for harm caused by the tortious conduct of another if he or she *knows* that the other's conduct is *tortious* and provides "*substantial assistance or encouragement* to the other." Thus, there are three elements that have to be pled under that standard: (1) that the defendant knew that the other's conduct was tortious; (2) that the defendant gave the other person substantial assistance or encouragement; and (3) that the plaintiff suffered damages from the other's tortious conduct.

Plaintiff has pled facts sufficient to state a claim under such an aiding-and-abetting theory. He alleged facts that, if proven, constitute a breach by Harding and Alexander-Hergert of their fiduciary duties to him as a minority shareholder. He alleges that defendants knew that Harding and Alexander-Hergert's conduct constituted such a breach and, notwithstanding that knowledge, provided them with assistance in successfully achieving the purpose of that breach, which was to "squeeze" plaintiff out of the corporation. A jury could conclude that that assistance was substantial. Finally, plaintiff alleges that he was damaged by the breach.

We have never applied the *Restatement* standard to hold someone liable for another's breach of fiduciary duty. However, nothing in the language of the cases in which we

have applied the standard raises any question about whether a claim can proceed under that circumstance. Moreover, despite what the majority says, there is no jurisdictional split as to whether to recognize such a claim. The majority concedes that "[t]hose courts that have considered the precise question have permitted a cause of action." 150 Or App at 44-45. It contrasts those courts with courts that "do not recognize tort liability for aiding and assisting." *Id.* at 45. That some courts do not recognize aiding-and-abetting liability is irrelevant to our inquiry, because Oregon does. Thus, there is no reason to conclude that plaintiff could not state a claim under an aiding-and-abetting theory for a breach of fiduciary duty.

Despite its exhaustive analysis, which suggests that a plaintiff could never state such a claim because the defendant will not have violated a personal duty, the majority, nevertheless, concludes that such a claim can in theory be made. It states:

> "The holding in this case will have implications for anyone who assists in conduct that breaches a fiduciary duty owed by another. Because of the competing interests involved and the importance of this issue to all individuals who may be involved with fiduciaries, we believe that whether liability for aiding and assisting a fiduciary in the breach of a fiduciary relationship in the absence of a personal duty must necessarily be decided on a case-by-case basis. We therefore reject the dissent's proposition that Oregon law imposes a generic duty in this context. Rather, we will look to the particular facts alleged to determine if such a duty exists."

150 Or App at 47.

The majority characterizes the complaint as alleging that defendants offered legal advice to the corporation that indirectly led to a "further breach of the fiduciary duty owed to plaintiff by Harding and Alexander-Hergert."[5] *Id.* at 47-48. It then concludes that

---

[5] It is difficult to conceive how the majority could "accept all well-pleaded allegations of the complaint as true and give plaintiff the benefit of all favorable inferences that could be drawn from the facts alleged," 150 Or App at 36, and still characterize plaintiff's complaint as alleging that defendants were giving legal advice to the corporation for the benefit of the corporation.

"[t]he tort [of breach of fiduciary duty] seeks to protect fiduciary relationships and to promote the worthy goal that fiduciary duties be kept and performed. That policy is not furthered by extending it to those who do not owe such a duty in the context of what is alleged here."

*Id.*

I disagree with the majority that the protection of fiduciary relationships would not be furthered by extending liability for breach of fiduciary duty to those who knowingly assist or encourage such a breach, particularly where, as alleged here, the assistance is essential to the successful breach of the duty. To impose liability on those who assist in the breach would serve to deter those whose assistance makes the breach possible, thereby protecting the affected fiduciary relationships.

The standard announced by the majority also misses the point of the aiding-and-abetting theory. Applying an aiding-and-abetting theory in the context of a breach of a fiduciary duty does not result in imposition of a fiduciary duty on a defendant who has no such duty. Instead, the defendant is held vicariously liable for the damages flowing from another's breach of his or her fiduciary duty because, once the plaintiff proves that the defendant aided and abetted the commission of that tort, the law holds the defendant liable as if he or she had actually committed the *tort*. Therefore, it makes no sense to determine, on a case-by-case basis, whether it would be appropriate to create a fiduciary relationship between a plaintiff and a particular defendant, because that conclusion is irrelevant to the disposition of the plaintiff's claim.

Moreover, even if the majority's theory were correct, making such a determination on a case-by-case basis would be untenable. The majority would require a trial court to determine, "by reference to the intrinsic nature of the tort of breach of fiduciary relationship and its purpose," whether the defendant had a duty not to aid or abet another in breaching the other persons's fiduciary duty. *Id.* at 47-48. The majority offers no guidance, however, on how a trial court should do that. It cites a number of factors it "considers," but it is unclear what bearing those factors have on its decision.

My example involving ABCD, Inc., can again be used to illustrate the flaw in the majority's approach. Based on the facts cited above, D files an action against A and B for breach of fiduciary duty and against F under an aiding-and-abetting theory. According to the majority, the trial court would have to determine whether, as a matter of law, D could state a claim against F "by reference to the intrinsic nature of the tort of breach of fiduciary relationship and its purpose." *Id.* at 47-48. As with the defendants in the case before us, F had no duty to the plaintiff. He took no independently tortious action against her. Further, he assisted A and B by doing what he was employed to do for the corporation. Finally, all of his actions took place after A and B had already breached their duty. Still, A and B were able to achieve their goal only with the knowing assistance of F, and D suffered damages as a result.

Applying the majority opinion, how would the trial court resolve whether D could state a claim against F for aiding-and-abetting liability? Certainly, allowing the claim to proceed promotes the goal of the tort of breach of fiduciary duty, which is to protect fiduciary relationships, but what role do all of the factors cited by the majority play? Why does the majority refuse to extend a "duty" to the attorney defendants in our case? Does the majority hold that plaintiff's claim fails because he, as a matter of law, failed to allege facts that constitute substantial assistance? Or, does it hold that plaintiff's claim fails because, as a matter of policy, a claim of that kind cannot be made against an attorney? Given the tenor of the majority's opinion, it seems likely that the trial court would conclude that the decision is based on the latter principle. Thus, because F did not have an attorney-client relationship with the corporation, the court would allow D's claim to proceed.

The practical result of the majority's position is that people will not be able to bring claims against attorneys who aid and abet others in breaching their fiduciary duties. However, the majority does not acknowledge that that is the purpose of the decision. Whether a person should be able to hold an attorney liable for another's breach of fiduciary duty is an intriguing issue, and the majority identifies some of the reasons for and against allowing such a claim. 150 Or App at 46-47. However, it does not adequately explain why it resolves

the debate in favor of excluding attorneys from liability. The majority's concerns against holding an attorney liable for another's breach of fiduciary duty are not unique. They exist in every instance involving an attorney-client relationship and an attempt to hold the attorney liable for another's tortious acts.

For example, in *Clausen v. Carstens*, 83 Or App 112, 730 P2d 604 (1986), the case cited by the majority for the proposition that an attorney "can be held liable for acting in concert with a client to commit a tort, even though the lawyer does not commit the tort personally," 150 Or App at 38, the plaintiff alleged a claim against the attorneys for trespass. The plaintiffs alleged that the attorneys and their client, "*acting together*, obtained an order appointing a receiver and caused the receiver to take legal custody of the [plaintiff's] businesses." *Clausen*, 83 Or App at 115. We held that, if the order appointing the receiver was void, then the quoted allegation was sufficient to state a claim against the attorneys for trespass. In litigating whether the attorneys and their client were working together to cause the trespass, there was a risk that the attorneys and their clients would have to disclose confidential communications to defend themselves. We concluded, however, that the fact that the defendants were attorneys did not affect their liability. *Id.* at 115 n 6.

The concerns expressed by the majority are even more pressing in the context of the illegal sale of securities. Under ORS 59.115(3), a person can be held liable for another's illegal sale of securities if he or she "participates or materially aids in the sale." Attorneys are often sued under that statute. In defending themselves against such claims, attorneys face the same dilemma that the majority argues defendants would face here if we allow plaintiff to maintain a claim against them. The only difference between the two claims is that, in the securities context, the burden of proving that a defendant knew that the sale of securities in which she assisted was unlawful is shifted from the plaintiff to the defendant. ORS 59.115(3).[6] Thus, defending against liability

---

[6] Under ORS 59.115(3), "[w]hether one's assistance in the sale is 'material' does not depend on one's knowledge of the facts that make it unlawful; it depends on the importance of one's personal contribution to the transaction." *Prince v. Brydon*, 307 Or 146, 149, 764 P2d 1370 (1988). Therefore, a plaintiff pursuing a claim under ORS 59.115(3) does not have to allege and prove that the defendant

is even more difficult for an attorney under ORS 59.115(3) than it is in a case such as this one, yet the legislature has not carved out an exception for attorneys.

In conclusion, if the majority is going to limit the aiding-and-abetting liability of attorneys, the court needs to justify carving out an exception for them in this context. If it undertook that task, it is likely that it would not be able to justify its position, because many of its concerns have been rejected or accommodated in other contexts.[7] It should not, however, haphazardly invoke a case-by-case standard when there is no principled reason in Oregon law to create one and no guidance offered on how to apply it. Until it undertakes the appropriate analysis, I am unwilling to join the majority's conclusion that plaintiff cannot state a claim against defendants under an aiding-and-abetting theory.

I concur with the majority's conclusion that plaintiff failed to state a claim against defendants for breach of fiduciary duty. However, because plaintiff stated a claim under both a civil conspiracy and an aiding-and-abetting theory under Oregon law, I respectfully dissent.

Leeson and Haselton, JJ., join in this concurrence and dissent.

---

knew that the sale was unlawful. Instead, the defendant bears the burden of proving, as an affirmative defense to liability, that he or she was reasonably ignorant of the illegal nature of the sale. ORS 59.115(3).

[7] For instance, the majority expresses a concern that attorneys will be held liable simply for giving legal advice. 150 Or App at 46-47. It states, "[i]nevitably, the advice and assistance rendered to a client as part of such relationships will, for the purposes of litigation, constitute 'substantial assistance[.]' " *Id*. That assumption is without support. In fact, the Supreme Court has suggested that, in the securities context, attorneys may not be held liable "solely [for] the preparation of documents and other services normally performed by a lawyer for his client." *Gonia v. Estep*, 251 Or 431, 433, 446 P2d 114 (1968). Further, the *Restatement* suggests a number of factors that can be considered to determine whether substantial assistance has been rendered, which could reduce the importance of the majority's concern. *See Restatement (Second) of Torts* § 876, comment *d*.

Moreover, the imposition of liability in this context requires the factfinder to find that the attorney knew that he or she was assisting in the commission of a tort. I know of no reason why an attorney should be insulated against liability for knowingly assisting someone to commit a tort.