[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12041
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-01361-LMM

WILLIAM A. CURRY,
ROBERT L. CLAXTON,
JOHN R. SULLIVAN,
JANICE M. WALKER,
THE WALKER FAMILY TRUST,
WILLIAM J. KISSEL,
CESAREO M. FLORES,
PATRICIA M. FLORES,

Plaintiffs-Appellants,

versus

TD AMERITRADE, INC.,
f.k.a. TD Waterhouse Investor Services, Inc.,
TD AMERITRADE CLEARING, INC.,
TD AMERITRADE HOLDING CORPORATION,
successor in interest to TD Waterhouse Group, Inc.,
f.k.a. Ameritrade Holding Corporation,

Defendants-Appellees,

CHARLES SCHWAB & CO., INC.

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 21, 2016)

Before JORDAN, JULIE CARNES and BLACK, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants William A. Curry, Robert L. Claxton, John R. Sullivan, Janice M. Walker, the Walker Family Trust, William J. Kissel, Cesareo M. Flores, and Patricia M. Flores appeal the district court's dismissal of their securities law claims in a putative class action against TD Ameritrade, Inc., TD Ameritrade Clearing, Inc., and TD Ameritrade Holding Corporation (together, TDA). Appellants appeal the district court's dismissal of the following claims: (1) control person liability under federal and Georgia law; and (2) secondary liability based on material aid or participation under Georgia law.  After review,[1] we affirm the judgment of the district court.

---

[1] "We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the nonmoving party." *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006).

## I. BACKGROUND

According to their Amended Complaint, Appellants invested in various private securities that ultimately proved to be a part of a sizable Ponzi scheme perpetrated by Angelo A. Alleca.  Alleca, a registered investment advisor, began selling partnership interests in his first fund, Summit Investments Fund, L.P., in 2004.  Alleca soon incurred large losses and investors in the Summit Fund began to redeem their investments, which he paid by selling new interests in Asset Class Diversification Fund, LP.  He continued this pattern in a nearly identical manner by fraudulently marketing equity interests in two new investment vehicles, Detroit Memorial Partners LLC and Private Credit Opportunities Fund, LLC. Alleca marketed each of the nonpublic securities directly to each of the purchasers though private placement memordanda, meetings, and phone calls.  TDA is not alleged to have participated in the actual sales.  Rather, once the decisions to invest had been made, Appellants invested in the fraudulent funds using TDA as a custodian to complete the transaction and then to hold the securities on behalf of the purchasers. TDA was not the only firm used for this purpose; initially, the Private Credit Opportunities Fund was listed on Charles Schwab's trading platform and was

3

transacted there until Schwab and Alleca ended their relationship and Alleca moved the asset to TDA's platform.[2]

Appellants' allegations are essentially identical with respect to each of the securities purchased.  In each case, Appellants assert that TDA materially aided and participated in Alleca's fraudulent sales because TDA "jointly executed the transaction [with Alleca] . . . using [TDA's] platform" and "custodied the . . . securities on [plaintiff's] behalf, valued those securities for [plaintiff] and [plaintiff's] investment advisors for both performance reporting and billing purposes, and independently reported the market value for [the] securities on [TDA's] statements sent directly to [plaintiff]."  TDA allegedly listed the securities as approved for sale on the trading platforms following TDA's review of documents demanded from Alleca by TDA's licensed broker-dealers, creating "a market for these otherwise unmarketable securities."  In addition, TDA reported valuations given by Alleca for the value of the securities directly to Appellants on their periodic statements.  TDA is not alleged to have undertaken any duty to perform independent valuations.

Appellants allege Alleca acknowledged he could not have perpetuated the Ponzi scheme without the assistance of TDA and that Appellants invested in the

---

[2] Charles Schwab & Co., Inc. was a defendant in this case but Appellants did not appeal the dismissal of their claims against Schwab and did not include allegations against Schwab in their amended complaint.

securities because of TDA's involvement.  They also contend because TDA is a large enterprise and member of the "Big Four" broker-dealer custodians, they felt they could safely avoid Ponzi schemes by investing through TDA.  Further, they charge TDA with "holding out Summit Wealth and Alleca as vali[d] [registered investment advisors (RIAs)]" and "allowing Alleca to represent to the investing public the existence of his . . . relationship with [TDA], implying the securities marketed were legitimate."  They support this contention by alleging Alleca was included in TDA promotional materials in his capacity as a registered investment advisor in order to solicit the business of other RIAs.

As a result of these factual allegations, Appellants allege that TDA controlled Alleca and materially aided and participated in Alleca's fraudulent sales.[3]  Appellants filed their initial complaint in May, 2014.  The district court dismissed it with leave to amend the claims regarding material aid or participation under Georgia law.  Thereafter, it dismissed their amended complaint as well because "the allegations . . . do not allow the Court to draw a reasonable inference

---

[3] The Ponzi scheme eventually collapsed, culminating in Alleca pleading guilty to criminal charges of securities fraud.  We take judicial notice of Alleca's indictment and settlement.  *See United States v. Alleca*, No. 1:15-cr-000458 (N.D. Ga. May 26, 2016) (guilty plea and minute sheet of court's acceptance of same); *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts."); Fed. R. Evid. 201 advisory committee's note to subdivision (f) ("In accord with the usual view, judicial notice may be taken at any stage of the proceedings, whether in the trial court or on appeal.").

that TDA participated in the alleged sales in any material way, or that TDA materially aided Alleca's alleged conduct."

## II. DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, a plaintiff must provide the factual grounds of his entitlement to relief, which requires more than "labels and conclusions," *Iqbal*, 556 U.S. at 678. A "formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Twombly*, 550 U.S. at 555).

The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556). Thus, to state a claim in this case, Appellants must do more than simply restate the elements of their cause of action.

6

*A. Control Theory*

"To state a claim under § 20(a) [of the Securities Exchange Act], [a plaintiff] must allege three elements: (1) that [the alleged violator] committed a primary violation of the securities laws; (2) that the individual defendants had the power to control the general business affairs of [the violator]; and (3) that the individual defendants had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quotation omitted). Appellants allege Alleca committed and pled guilty to numerous violations of the securities laws, satisfying the first prong. Nevertheless, the complaint is deficient with respect to the second and third elements of the control test. Taking the facts as stated by the plaintiffs and making all reasonable inferences in their favor, TDA did not control Alleca. There are no factual allegations tending to show TDA controlled the general business affairs of Alleca or Summit Wealth, much less had the power to direct the specific policies resulting in the fraud.[4] Nothing Appellants allege even remotely approaches the level of control necessary to state a claim. *See, e.g.*, *Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 397 (11th Cir. 1996) (chairman of board of directors of violating company was not liable on control theory where

---

[4] The best Appellants can offer is the allegation that TDA asked Alleca to complete their Non-Standard Asset Custody Agreement and deliver copies of the offering memorandum, subscription agreement, and most recent financial statements pertaining to one of Alleca's funds. This falls far short of control.

he did not direct the specific policy resulting in fraudulent prospectus, even though he participated in the related restructuring).  Accordingly, we affirm the dismissal of Appellants' federal and state control person liability claims.[5]

## B. Material Aid or Participation

Section 10-5-14 of the Georgia Securities Act of 1973 provides that "every dealer . . . who participates in any material way in the sale" is liable jointly and severally with the person primarily liable for the securities violation.  O.C.G.A. § 10-5-14(c) (2000).  In 2008, Georgia replaced its existing blue sky laws with the 2002 version of the Uniform Securities Act.  *See* 2008 Ga. Laws 528.  Section 10-5-58 of the Georgia Uniform Securities Act contains a secondary liability provision similar to the old statute, stating that "[a] person that is a broker-dealer . . . that materially aids the conduct giving rise to the liability" is liable jointly and severally with the primary violator.  O.C.G.A. § 10-5-58(g)(4).  Both statutes provide an inverse negligence affirmative defense.  We consider them together, as the district court and the parties have done.

Appellants contend that TDA materially aided and participated in the sales simply by virtue of their having acted in accordance with their duties as custodian.

---

[5] Although there is no reported Georgia case setting forth a test for control under either the Georgia Securities Act of 1973 (GSA) or the Georgia Uniform Securities Act (GUSA), we affirm the dismissal of plaintiffs' state control liability claims as well because the GSA and GUSA control liability provisions are nearly identical to the federal statute.  *Compare* 15 U.S.C. § 78t(a) *with* O.C.G.A. § 10-5-14(c) (2000) *and* O.C.G.A. § 10-5-58(g)(1).  Appellants concede this is the correct approach.

Because there is no reported Georgia case applying either version of the statute, Appellants rely primarily on state court cases from Oregon and Kansas applying those jurisdictions' analogous Uniform Act provisions, and construe the statutory language to impose an affirmative duty on TDA to investigate for fraud each of the transactions it completes as a custodian.

We conclude TDA did not materially aid or participate in the sale. First, the cases cited by Appellants are not binding, and are distinguishable because they hold that materiality turns on the exercise of professional judgment. *See Prince v. Brydon,* 764 P.2d 1370, 1371 (Or. 1988) (holding that "knowledge, judgment, and assertions" reflected in private placement memorandum drafted by lawyer rendered lawyer's aid material, not merely ministerial); *Klein v. Oppenheimer & Co.*, 130 P.3d 569, 588 (Kan. 2006) (holding that clearing broker's services were material because they required the "exercise of professional expertise and judgment," including calculation of margin requirements and initiation of margin calls). Second, the official comments to the Uniform Act provision on which § 10-5-58 is based bolster our conclusion. Comment 11 states that "the performance by a clearing broker of the clearing broker's contractual functions—even though necessary to the processing of the transaction—without more would not constitute material aid or result in liability under this subsection." Unif. Sec. Act § 509 cmt. 11 (2002). TDA's alleged custodial activities are even less substantial than

9

those of a clearing broker. *See Klein*, 130 P.3d at 572 (describing role of clearing broker).

Appellants have alleged no facts tending to show that TDA contributed to the fraudulent transactions in any way other than by fulfilling its contractual duties to act as custodian. TDA executed the transactions on behalf of the parties, but did not procure the investments for Appellants or recommend them; they reported values of the securities to the investors but expressly disclaimed any investigation; and they held the securities on behalf of the Appellants, but undertook no duty to scrutinize the financial health of the investment funds.

Additionally, Appellants' reading of the provisions would make materiality superfluous. To state a secondary liability claim, a plaintiff could merely allege that the securities violator used a custodian; there would be no need to allege facts tending to show any greater degree of involvement. All custodians would be subject to onerous discovery at all times simply by virtue of being in business. If the Georgia legislature had contemplated such a result, it could simply have imposed blanket liability, leaving only the affirmative defense. *See, e.g.*, 815 Ill. Comp. Stat. Ann. 5/13 ("[E]ach underwriter, dealer, internet portal, or salesperson who shall have participated or aided *in any way* in making the [unlawful] sale . . . shall be jointly and severally liable to the purchaser.") (emphasis added).

10

Finally, Appellant's suggestion that TDA's marketing efforts featuring Alleca constitute material aid or participation falls short as well.  Appellants allege those efforts aimed to increase TDA's registered investment advisor clientele, but do not contend these activities caused any of the plaintiffs to invest with Alleca. The district court was correct to ignore these facts as irrelevant to the question of material aid to or participation in Alleca's fraudulent sales.

## III. CONCLUSION

For the reasons given above, we affirm the district court's dismissal of Appellants' claims.

**AFFIRMED.**